## Richmond

VIKTORIA ANNALIESE SZEMLER AND TIBOR SZEMLER V. WILTON R. CLEMENTS AND ILSE FRIEDA CLEMENTS.

March 4, 1974.

Record No. 8272.

Present, All the Justices.

*I. J. Crickenberger (Peter Heidenberger [D.C.]; Crickenberger & Moore; Lambert, Furlow, Elmore & Heidenberger [D.C.], on brief), for appellants.*

*F. Mather Archer (Potter & Archer, on brief), for appellees.*

COCHRAN, J., delivered the opinion of the court.

Wilton R. Clements, a lieutenant commander in the United States Navy, and Ilse Frieda Clements, his wife, filed a petition in the trial court on May 21, 1970, for the adoption of Mrs. Clement's niece, Petra Sebisch, an infant. Petra's mother, Viktoria Annaliese Sebisch, filed a petition in December, 1970, opposing the adoption. Subse-

quently she married Petra's putative father, Tibor Szemler, who, by order entered November 4, 1971, was permitted to become a party to the petition in opposition to adoption.

After considering the evidence, some taken by deposition in West Germany and some heard *ore tenus*, the chancellor entered an interlocutory order on September 22, 1972, approving the adoption of Petra by the Clementses, subject to the probationary period required by law and to the provisions of the final order. We granted the Szemlers this appeal.

Petra was born in Frankfurt, West Germany, on May 17, 1968, while her mother was married to Alfred Sebisch. Beginning in 1968, the mother corresponded with her sister, Ilse Clements, who was then living in Virginia, with reference to adoption of Petra.

The Sebisches were divorced on February 14, 1969, and the Magistrate's Court of Frankfurt on January 30, 1970, ruled that Petra was not the legitimate child of Alfred Sebisch. Guardianship of the child was awarded to the Frankfurt Youth Commission for purposes of establishing paternity, asserting support claims, and determining inheritance rights. During the spring of 1970 Petra lived in her mother's custody, supported by welfare, under poor conditions.

In February, 1970, Ilse Clements went to Germany and visited Petra's mother and another sister. On March 26, 1970, the mother executed a consent for the Clementses to adopt Petra, and on April 12, 1970, the Clementses brought Petra to their home in Springfield, Virginia, where the child has since resided.

On April 24, 1970, the mother executed a document purporting to revoke her consent to the adoption, but no notice of the revocation was communicated to the Clementses prior to the filing of their petition on May 21, 1970. In June, 1970, the mother's attorney in Germany wrote to Lieutenant Commander and Mrs. Clements that the mother intended to marry Petra's father and wished the return of her child. In November, 1970, the Frankfurt Youth Commission consented to the proposed adoption by the Clementses.

On February 19, 1971, Tibor Szemler formally acknowledged that he was Petra's father, and on March 8, 1971, he married her mother. Thereafter, the District Court of Frankfurt ruled that Petra had become legitimate by the marriage of her parents and that her mother's previous consent to the adoption was invalid under German law for lack of proper authentication. That court also denied the motion of the Frankfurt Youth Commission to substitute the Com-

mission's consent to the adoption in place of parental consent withheld by the Szemlers. The Clementses were not parties to the proceeding in Germany.

Petra has made progress since coming to live with the Clementses. They are fit and proper persons and have provided an excellent home for the child.

The chancellor, having made the foregoing findings of fact, concluded that Tibor Szemler is Petra's father; that the mother had executed a valid consent to the adoption, which consent she had subsequently revoked; and that "by cogent and convincing evidence it is the best interest of the child" that she be adopted by the Clementses. The order of adoption, entered pursuant to the findings of fact and conclusions of law which were set forth in the chancellor's opinion letter, recited that the Clementses were suitable persons to adopt the child and that her "welfare and best interests . . . will be promoted by this adoption . . . ."

In Virginia, adoption is governed by Code §§ 63.1-220 through -238 (1973 Repl. Vol.). Code § 63.1-226, relating to the entry of an interlocutory order of adoption, provides in pertinent part:

> "If, after considering [the commissioner's report] the court is satisfied that all of the requirements of this chapter have been complied with, that the petitioner is financially able to maintain adequately and is morally suitable and a proper person to care for and train the child, that the child is suitable for adoption by the petitioner, and that the best interests of the child will be promoted by the adoption, it shall enter an interlocutory order of adoption . . . ."

The requirements pertaining to, consent for adoption are found in Code § 63.1-225.[1] This statute provides that adoption may be granted

---

[1] "§ 63.1-225. Parental, etc., consent.—No petition for adoption shall be granted, except as hereinafter provided in this section, unless there be written consent to the proposed adoption filed with the petition. Such consent shall be signed and acknowledged before an officer authorized by law to take acknowledgments.

"The consent of a parent for the adoption of his or her child shall not be valid unless the child be at least ten days old at the time the consent is signed.

"A parent who has not reached the age of eighteen shall have legal capacity to give consent to adoption and shall be as fully bound thereby as if said parent had attained the age of eighteen years.

"Consent by the child shall be necessary if the child is fourteen years of age or older, unless the court finds that the best interests of the child will be served by not requiring such consent.

"Consent shall be executed:

only upon the consent of parties specified in subparagraphs (1), (2) or (3), or upon a finding under subparagraph (4) that consent has been withheld contrary to the best interests of the child or is unobtainable.

The trial court correctly found that the requirements of Code § 63.1-225 had been satisfied. Since Petra was illegitimate at the time the petition for adoption was filed, only the mother's consent was required under subparagraph (2) of the statute. *See Malpass* v. *Morgan*, 213 Va. 393, 397, 192 S.E.2d 794, 798 (1972). *Cf. Harmon* v. *D'Adamo*, 195 Va. 125, 129, 77 S.E.2d 318, 320 (1953), where under the predecessor statute, Code § 63-351 (1950), we held that, although the mother of an illegitimate child had consented to the adoption, the trial court was without jurisdiction to order adoption when the parents had married prior to entry of the final decree and the father had not consented to the adoption. The present language of Code § 63.1-225(2), which apparently was designed to change the *Harmon* rule concerning the consent of the father of an illegitimate child, was added by Acts, 1954, c. 489.

■ The chancellor found that Petra's mother had executed a consent to the adoption, valid under Virginia law, that was not revoked until after the petition for adoption had been filed. We find no error in that ruling, which was fully supported by the evidence. The mother's revocation of her consent was ineffective to divest the

---

"(1) By the parents or surviving parent of a child born in wedlock; provided, however, if the parents are divorced and one has been divested of custody by terms of the divorce and does not consent to the adoption the petition may be granted without the consent of such parent; or

"(2) By the mother of a child born out of wedlock. The consent of the father of a child born to an unmarried woman shall not be required unless such child becomes legitimate prior to the filing of the petition for adoption; or ·

"(3) By the child placing agency or the local board of public welfare or social services having custody of the child, with right to place him for adoption, through court commitment or parental agreement as provided in § 63.1-56 or § 63.1-204 of the Code; or an agency outside the State which is licensed or otherwise duly authorized to place children for adoption by virtue of the laws under which it operates; or

"(4) If after hearing evidence the court finds that the consent of any person or agency whose consent is hereinabove required is withheld contrary to the best interests of the child, or if a valid consent is unobtainable, the court may, twenty-one days after personal service of notice of petition on the party or parties whose consent is required by this section or if personal service is unobtainable ten days after the completion of the execution of an order of publication against the party or parties whose consent is required by this section concerning the petition, grant the petition without such consent.

"If the child is not in the custody of a child placing agency and both parents are deceased, the court, after hearing evidence to that effect, may grant the petition without the filing of any consent."

court of jurisdiction, which had attached as of the date of filing the petition for adoption. Having revoked her consent, however, Petra's mother was not precluded from opposing the adoption.

The dispositive question for our determination is whether the chancellor erred in finding that the adoption was in Petra's best interests, a condition precedent to entry of an interlocutory order under Code § 63.1-226. The Szemlers, relying on *Judd* v. *Van Horn*, 195 Va. 988, 81 S.E.2d 432 (1954), argue that there is a legal presumption that custody with the natural parents will serve the best interests of the child, and that the burden rests on those resisting the parental right of custody to rebut this presumption by clear, cogent and convincing evidence that the parents are unfit. *See Wilkerson* v. *Wilkerson*, 214 Va. 395, 397, 200 S.E.2d 581, 583 (1973). Since there is little evidence that the Szemlers are unfit parents at this time, they assert that the Clementses have not met their burden of proof under Code § 63.1-226.

We do not agree with the Szemlers' assessment of the burden of proof imposed upon the proponents of adoption. We hold that the presumption in favor of parental custody is rebuttable by proof that the requirements of Code § 63.1-225 have been met as of the date of filing the petition for adoption. Having satisfied the provisions of that statute, the proponents of adoption are entitled to an interlocutory order under Code § 63.1-226 if the trial court, after hearing the evidence of both the proponents and the opponents of the adoption, finds by a preponderance of the evidence that the proposed adoption would be in the child's best interests.

There is ample authority to support this construction of our adoption statutes. In adoption cases we have repeatedly held that the welfare of the child is the paramount consideration and that the technical rights of the parents may be disregarded if the child's welfare would best be served by denying custody to the parents. *Malpass* v. *Morgan, supra*, 213 Va. at 399, 192 S.E. 2d at 799; *Forbes* v. *Haney*, 204 Va. 712, 133 S.E.2d 533 (1963); *Phillips* v. *Kiraly*, 200 Va. 345, 351, 105 S.E.2d 855, 859 (1958); *cf. Wilkerson* v. *Wilkerson, supra*.

Parental rights of custody are founded upon the strong presumption that the best interests of the child will be served by placing it in the custody of its natural parents. *Phillips* v. *Kiraly, supra; Judd* v. *Van Horn, supra*, 195 Va. at 996, 81 S.E.2d at 436. *See* Code § 31-1, which provides that the father and mother, or the survivor of them, are the natural guardians of every legitimate child. *See also*

*Walker* v. *Brooks,* 203 Va. 417, 421, 124 S.E.2d 195, 198 (1962). But this presumption is rebuttable by clear, cogent and convincing proof of either voluntary relinquishment of the right to custody or unfitness of the parent. *Walker* v. *Brooks, supra; Williams* v. *Williams,* 192 Va. 787, 792, 66 S.E.2d 500, 503 (1951). Thus, in *Fleshood* v. *Fleshood,* 144 Va. 767, 769-70, 130 S.E. 648, 649 (1925), we held that where a parent has voluntarily surrendered the custody of his child and subsequently seeks to regain possession, he has the burden of proving that such transfer of custody is in the child's best interests. *Cf. Bidwell* v. *McSorley,* 194 Va. 135, 72 S.E.2d 245 (1952). And in *Dyer* v. *Howell,* 212 Va. 453, 456, 184 S.E.2d 789, 792 (1971), we held that where the father had been divested of custody by a court of competent jurisdiction, the burden was on him to show that circumstances had changed so that the child's best interests required a transfer to his custody.

In *Malpass* v. *Morgan, supra,* we considered the consent requirements of Code § 63.1-225 as that statute read prior to inconsequential 1972 amendments. We were particularly concerned with Code § 63.1-225 (4), which authorized the court to order adoption without parental consent if the court found that the required consent was withheld contrary to the best interests of the child. The trial court, finding that the best interests of the child would be promoted by his adoption by his stepfather, had approved the adoption. We reversed, holding that the trial court had erred in assuming that a finding under Code § 63.1-226 that the best interests of the child would be served by the adoption was equivalent to a finding under Code § 63.1-225 (4) that the natural father had withheld his consent contrary to the best interests of the child. We determined that the latter provision required at least a showing that continuance of the relationship between the child and its father would be detrimental to the child's welfare. 213 Va. at 399, 192 S.E.2d at 799. Thus, the distinction was clearly established between the higher standard of proof required to meet the provisions of Code § 63.1-225 (4) and that applicable to Code § 63.1-226.

Here, the evidence established that a valid consent to Petra's adoption within the meaning of Code § 63.1-225 had been executed. Consequently, the Clementses were not required to show that the Szemlers were unfit parents. The Clementses needed only to prove by a preponderance of the evidence that Petra's best interests would be served if she remained in their custody and were adopted by

them. The chancellor so found, and his ruling was fully supported by the evidence.

The record shows that Petra had been neglected by her mother and maintained in sordid surroundings before she came to the United States. In her new home, she has improved physically and psychologically, is healthy and happy, and benefits from the close family relationship which she enjoys with the Clementses. There was evidence that removal from the Clementses' custody would be detrimental to Petra. There was no evidence that transfer of Petra's custody to the Szemlers would benefit her or promote her welfare. Consequently, the chancellor did not err in entering the interlocutory order of adoption.

*Affirmed.*