## Richmond

### SHIRLEY MARGARET RATLIFF SHORTRIDGE, ET AL.

### V.

### ARLENE DEEL, ET AL.

January 21, 1983.

Record No. 801001.

Present: All the Justices.

*Keary R. Williams (Williams & Gibson,* on brief), for appellants.
*Gilbert K. Davis (Davis, Gillenwater & Lynch,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

Arlene Deel and Jerry Deel, her husband, filed their petition in the Juvenile and Domestic Relations Court of Buchanan County to obtain custody of Lawrence Robbie Don Ratliff (Robbie), an

infant born May 11, 1977. Shirley Margaret Ratliff (Margaret), the unmarried mother of Robbie, opposed the petition and appealed the order entered on December 13, 1978, awarding custody to the Deels. On December 16, 1978, Margaret married Elbert Shortridge, who had testified at trial that he was Robbie's father.

In February of 1979, the Deels filed their petition in the Circuit Court of Dickenson County for the adoption and change of name of Robbie. By agreement of counsel, appeal of the award of custody was consolidated with the petition for adoption for hearing in the trial court and the transcript of the proceedings in the earlier custody hearing was made a part of the record. The court also heard additional evidence *ore tenus* and considered reports of the Departments of Social Services of Buchanan and Dickenson Counties and of the Commissioner of Welfare. Shortridge was before the court. The Shortridges, represented by the same attorney, testified in opposition to the Deels' petitions for custody and adoption.

In its order entered March 31, 1980, granting custody to the Deels, the trial court set forth findings that Margaret had voluntarily relinquished Robbie to the Deels shortly after the child's birth, that Shortridge had "relinquished any custodial and parental rights he may have had," and that the best interests and welfare of the child would be served by awarding custody to the Deels. The court found in the same order that Margaret and Shortridge had withheld their consent to Robbie's adoption contrary to the best interests of the child and that under the provisions of Code § 63.1-225, therefore, their consent was not required. The order referred the matter again to the Department of Social Services of Dickenson County and the Commissioner of Welfare for a supplemental report under Code § 63.1-223 before entry of an interlocutory order of adoption under Code § 63.1-226.

On appeal, the Shortridges contend that the trial court erred in granting custody of Robbie to the Deels and in finding that the Shortridges had voluntarily relinquished custody of Robbie and had withheld consent to his adoption by the Deels contrary to the best interests of the child. We will address the award of custody, including the finding of voluntary relinquishment of custody by the natural parents.

We will not review, however, the correctness of the trial court's finding, set forth in the portion of its order pertaining to

the petition for adoption, that the natural parents withheld their consent to adoption contrary to the best interests of Robbie. Absent an appealable order in the adoption proceeding we may not determine whether any of the requirements for adoption have been met. The order in this case was not a final or even an interlocutory order of adoption nor was it appealable as an order "[a]djudicating the principles of a cause." Code § 8.01-670(B)(3). The trial court, by deciding that the consent of the natural parents to the adoption was not required, made only one of several determinations necessary for the entry of an order of adoption. *See* Code §§ 63.1-226, -230. Therefore, the finding made in the adoption proceeding is not yet appealable.

■ Voluntary relinquishment by a parent of custody of a child must be shown by clear, cogent, and convincing evidence. *Szemler* v. *Clements,* 214 Va. 639, 644, 202 S.E.2d 880, 884 (1974); *Walker* v. *Brooks,* 203 Va. 417, 421, 124 S.E.2d 195, 198 (1962). The Juvenile and Domestic Relations Court of Buchanan County, in its order entered December 13, 1978, found that the Deels had carried their burden of proving by the required standard that Margaret, then unmarried, had voluntarily relinquished custody of Robbie. The trial judge, in letter opinions dated December 31, 1979, and March 6, 1980, stated that he concurred in this finding as to Margaret and concluded that Shortridge had also voluntarily relinquished custody when the Deels first obtained Robbie.

■ In accordance with familiar principles, we will review the evidence in the light most favorable to the Deels, the prevailing parties below. The credibility of witnesses was crucial to the determination of the facts, and the findings of the trial court based upon the judge's evaluation of the testimony of witnesses heard *ore tenus* are entitled to great weight.

Prior to Robbie's birth, Margaret lived in a mobile home with her two illegitimate daughters, Gail and Shane, ages 12 and 3, respectively, at the time of the first custody hearing in 1978. Margaret was self-employed as a bookkeeper.

Arlene Deel testified that Margaret, early in her pregnancy asked her to take the baby and she agreed to do so on condition that Margaret would not change her mind and try to take the baby back. When she had been pregnant about six months, Margaret came to the Deels' home and told Arlene that she had the necessary money and was going to have an abortion if Arlene did not want the baby. Arlene reassured Margaret and told her that

she could see the baby whenever she wished. Arlene felt that in this conversation she had been responsible for persuading Margaret not to have the abortion. This testimony was contradicted by Margaret, but the trial judge could and apparently did believe Arlene.

There was evidence that the baby, born prematurely, was kept in the hospital for two weeks, during which time Arlene and her daughter, Pam, visited him frequently. When the baby was released from the hospital, Arlene, Pam, and Margaret brought him directly from the hospital to the Deels' home, where he remained almost constantly for 17 months. Pam gave him his principal name. Margaret was permitted by the Deels to see Robbie and to have him visit her in her home. After 17 months, Margaret took the child for a visit and refused to return him to the Deels until five weeks later, when, on the Deels' petition, the juvenile and domestic relations court awarded custody to them. Robbie has remained in the custody of the Deels since December of 1978. They have provided for him a structured family life in a stable environment.

About one year after Robbie's birth, an acquaintance of Margaret's asked her whether the report was true that she had given her baby to the Deels. According to this witness, Margaret acknowledged that she had done so, because she thought the Deels could provide for him better than she could.

To enable the Deels to include Robbie under their medical policy Margaret informed an insurance agent that she had given Robbie to the Deels for adoption. The Deels included him under another insurance policy also covering medical expenses; Robbie became a named insured on the policy under the name "Deel." They paid for most of Robbie's food, clothing and medical treatment.

Margaret refused the Deel's offer to pay the hospital bill incurred at the time of Robbie's birth. She paid the bill in part and, after her marriage, she and her husband paid the balance.

Margaret admitted that she lived with one Perry Fuller before she began her intimate relationship with Shortridge, and that she may have told Fuller that he was Shane's father, but she insisted that Shortridge was the father of both Shane and Robbie. She testified that one Ralph Reece was Gail's father. Although she admitted having had sexual relations previously with other men,

Margaret maintained that she had been faithful to Shortridge ever since Shane's birth.

Until he admitted his paternity in the hearing on December 6, 1978, Shortridge had denied that he was Robbie's father. He was a first cousin of Arlene's and a friend of Jerry Deel's. He told Arlene that one Arnold Bailey was Robbie's father; he informed Jerry that he did not wish to see Robbie because the child was not his.

Although there is evidence that Shortridge contributed to the support of Margaret before their marriage, there is no evidence that he contributed directly to Robbie's support. He conceded that he did not call the Deels a single time during the first 17 months of Robbie's life to inquire about the child.

The foregoing clear, cogent, and convincing evidence amply supports the findings of the trial court that Margaret voluntarily relinquished the custody of Robbie to the Deels and that Shortridge relinquished whatever custodial and parental rights he had.

■ Once the relinquishment of custody is established, the natural parents who seek to regain custody must bear the burden of proving that such change is in the child's best interests. *Szemler v. Clements, supra,* 214 Va. at 644, 202 S.E.2d at 884. The trial court could have based its award of custody to the Deels on a finding that the Shortridges had failed to carry the burden of proving that transfer of custody to them would be in the best interests of the child. But the court went further by affirmatively finding that the "best interest and welfare of the child" would be served by granting custody to the Deels. The trial judge stated in his letter opinion of December 31, 1979, that the "time element involved after the Deels first obtained actual custody . . ., the history of Mrs. Ratliff and Mr. Shortridge prior to their marriage," and the medical evidence concerning the child "weighed very heavily" in his decision.

■ The evidence shows that Margaret made no effort to regain custody of Robbie during the first 17 months of his life. Her explanation that she considered the Deels to be "baby-sitters" for her child throughout that time, and she did not want to lose the benefit of their services, understandably was rejected by the trial court in its finding of voluntary relinquishment of custody. Except for the period of five weeks prior to the hearing on December 6, 1978, Robbie has been a part of the Deel family. To him Arlene is his mother, Jerry his father, and Pam his sister. They brought this

frail and sickly child, who suffered from respiratory problems, safely through his earliest years. Margaret conceded that from December 6, 1978, until April 27, 1979, she never had any contact in person with Robbie and never inquired of the Deels about him in person or by telephone. On April 30, 1979, the trial court entered an order granting reasonable visitation rights to Margaret and Shortridge. By order entered June 21, 1979, these visitation rights were specifically defined — Margaret and Shortridge were permitted to visit Robbie in the Deels' home from 2:00 p.m. to 3:00 p.m. each Sunday. The same order required that Robbie, the Deels, and the Shortridges submit to psychiatric evaluation by Dr. Pierce D. Nelson.

After marrying Shortridge, Margaret moved with Gail and Shane into the house occupied by Shortridge. The Shortridges then assumed a more conventional life-style than either had previously experienced since Robbie's birth. The evidence shows that the Shortridges, as well as the Deels, had the financial resources to provide more than adequately for Robbie's material needs. According to Margaret, she knew Shortridge was Shane's father and Shortridge had considered adopting her, but Shane had not been adopted by Shortridge and still went by the name of "Ratliff." Margaret said that Shortridge might wish to adopt all three of her children, but this plan was still under discussion. Prior to his marriage to Margaret, Shortridge had been married for more than 19 years to a school teacher, who testified that he physically injured her during their marriage and drank to excess every weekend.

Dr. Nelson, who had conducted interviews with the Deels, the Shortridges, and Robbie, testified that Robbie was a hyperactive child but that the Deels had done "a beautiful job with the hyperactivity." He found that both Shortridges and both Deels came within "the broad range of normal" on psychiatric evaluation. He felt, however, that Shortridge, with "limited ability" and "temper" problems, would have "some trouble" in taking care of a child, especially a child such as Robbie, who had problems with "wetting of his pants, . . . sleeping, irritability, and excitement . . . and some fear." Dr. Nelson recommended that Robbie remain with the Deels.

In making his recommendation, Nelson acknowledged it was "a close decision." He knew Margaret had been acutely psychotic in 1969, had been hospitalized in a psychiatric hospital and had "spent time in therapy." He was of opinion that she had recov-

ered, but he desired to conduct further psychological testing, which she refused, to reinforce his belief that she was "functioning normally." Dr. Nelson testified that Robbie, a brighter-than-average child, was happy with the Deels. The doctor's recommendation as to custody was based upon Robbie's hyperactivity and the disruptiveness of moving the child.

We hold that the evidence amply supports the findings of the trial court and we will affirm the decree awarding custody to the Deels.

*Affirmed.*