# CIRCUIT COURT OF THE CITY OF RICHMOND

Charles-Pierre Tanner

v.

Terrie Griffin Price

Case No. HJ-1982-A

Charles-Pierre Tanner

v.

Terrie Griffin Price

Case No. HJ-1989-A

Charles-Pierre Tanner

v.

Terrie Griffin Price

Case No. HJ-1990-A

March 24, 1999

By Judge Melvin R. Hughes, Jr.

These cases are here on appeal from the Juvenile and Domestic Relations Court. At issue is custody and visitation concerning an eight year old child. The proceedings began on petitions filed by Terrie Griffin Price, the maternal grandmother, and Charles-Pierre Tanner, the father. After a hearing, the court took the matter under advisement.

The child, Amber Tanner, was born of a union between Kaiya Price-Tanner (Kaiya), mother, and Charles-Pierre Tanner (Pierre), father. Kaiya and Pierre were divorced by final decree entered by this court in September 1993. In the divorce proceeding, the parties agreed in a written separation agreement to joint legal custody with physical custody with Kaiya. Following the divorce, as was the case for most of Amber's life, Kaiya and Amber lived with her mother, the maternal grandmother, Terrie, in Terrie's home. Thereafter, there came a time when Kaiya began experiencing mental problems. She later left her mother's home leaving Amber there in the care and custody of her grandmother. Thereafter, both Terrie and Pierre sought custody of Amber in the Juvenile Court by respective petitions.

The leading consideration is the best interests of the child. The General Assembly in its enactment of Va. Code § 20-124.3 has set out nine areas to consider on the matter of child custody. In § 20-124.2 the General Assembly directs that in ordering custody and visitation:

> the court shall give primary consideration to the best interests of the child. The court shall assure minor children of frequent and continuing contact with both parents, when appropriate, and encourage parents to share in the responsibilities of rearing their children. As between the parents, there shall be no presumption or inference of law in favor of either. The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody to any other person with a legitimate interest.

"Person with a legitimate interest" is defined in § 20-124.1 to "include but is not limited to grandparents ... provided any such party has intervened or is otherwise properly before the court."

In a parent versus nonparent dispute, the Court of Appeals of Virginia has stated:

> In any child custody decision, the lodestar for the court is the best interest of the child. *Venable v. Venable*, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986). The law presumes that the best interest will be served when the child is in the custody of the natural parents. *Judd v. Van Horne*, 195 Va. 988, 995-96, 81 S.E.2d 432, 436 (1954). This presumption is rebuttable, however, if the non-parent adduces clear

and convincing evidence that (1) the parents are unfit; (2) a court previously has granted an order of divestiture; (3) the parents voluntarily relinquished custody; (4) the parents abandoned the child; or (5) special facts and circumstances constitute an extraordinary reason to take the child from the parents. *Bailes v. Sours*, 231 Va. 96, 100, 340 S.E.2d 824, 827 (1986). Once the presumption favoring parental custody is rebutted, the natural parents who are seeking to regain custody must bear the burden of proving that custody with them is in the child's best interests. *Shortridge v. Deel*, 224 Va. 589, 594, 299 S.E.2d 500, 503 (1983).

Thus, there is a presumption in favor of a parent that parental custody is in the best interests of the child. Accordingly, the Virginia Court of Appeals has otherwise delineated these same considerations for determining whether the presumption should prevail over the request for custody by a nonparent. See *Elder v. Evans*, 16 Va. App. 60 (1993); *Bottoms v. Bottoms*, 249 Va. 410 (1995). So the question is whether Pierre has the presumption and, if so, whether Terrie has rebutted it and shifted the burden of proof back to Pierre. The court finds here that Pierre, as a parent, has the benefit of the presumption as Terrie has not adduced any evidence under the mentioned criteria to rebut the presumption.

The evidence revealed that, since Amber has been in Terrie's custody, she has gotten along well and is achieving in school. Terrie lives in a quiet, settled neighborhood. Amber has a room of her own, and the home is literally within walking distance from the elementary school she attends.

Pierre lives in a townhouse not far from where Amber resides with her grandmother. There is a room in Pierre's home for Amber. Pierre testified that he works for the United Parcel Service from 3:00 in the afternoon until 8:00 in the evening. Following the hearing, counsel for Pierre stated in a letter that Pierre's work hours have since changed to the day shift meaning that Pierre's work hours are now from 6:00 a.m. to 6:00 to 7:00 p.m., Monday through Friday. In the event he is awarded custody Pierre plans to have Amber attend a day care facility after school. His sister will pick up Amber from day care and bring her to her home until he leaves work for the evening, at which time, he and April will return to his home for the balance of the day.

As noted, Amber has spent most of her life living in Terrie's home. During the marriage, Kaiya lived with her mother, Terrie, and Amber lived there as well. There was a time that both Kaiya and Pierre lived with Terrie during the marriage; during these times, Amber lived with her parents, as one

would expect. The evidence further revealed that both Terrie and Pierre are suitable caretakers should custody be awarded to either of them. Neither is unfit. Terrie has provided exemplary care for Amber since Kaiya left the home. At the same time, Pierre is sincere in his devotion to his child, and there is nothing in the evidence that suggests that custody with him would be inimical to the child's interests in any way.

Of the criteria listed in *Smith v. Pond*, the "special facts and circumstances" under (5) is the only one applicable to the case at bar. Again, by the case law, the threshold question is whether Terrie has rebutted the presumption by such a showing by evidence. While Amber has lived in Terrie's home for most of her life, living there with her mother, Kaiya, and even for a while there during her parents' marriage, these circumstances do not present "special facts and circumstances" sufficient enough to rebut the presumption in Pierre's favor. The court has to conclude that the apparent reason for her presence there is related to where her parent or parents were then residing. While Amber's presence in Terrie's home makes for familiar surroundings and while the proximity of the home to Amber's school makes for convenience and ease in going to and from school, these are not "special circumstances" which establish an "extraordinary reason" to deny custody to a parent who has not been shown to be unfit, abandoned the child, etc. *See also, Mason v. Moon*, 9 Va. App. 217, 223 (1989) (Court of Appeals ruled that the fact that the child had been in grandmother's continuous care since birth and that, if custody was given to mother, the child would be living with her stepfather, who killed her father, were not extraordinary reasons to rebut the presumption in favor of her natural mother).

The Court finds, with the benefit of the presumption, there is nothing in the evidence to suggest, and certainly nothing approaching clear and convincing evidence, that Amber's best interest would be better served if custody is awarded the grandmother as opposed to the child's father.

Accordingly, for these reasons and notwithstanding the guardian ad litem's recommendation to the contrary, the Court awards custody to Pierre with reasonable visitation to Terrie.