# Richmond

BERTHA F. WALKER v. VIRGINIA L. BROOKS.

March 5, 1962.

Record No. 5356.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

*Thomas N. Parker, Jr. (Bremner, Neal, Harris, Williams & Battle,* on brief), for the plaintiff in error.

No brief or argument for the defendant in error.

CARRICO, J., delivered the opinion of the court.

■ Virginia L. Brooks filed a sworn petition for a writ of habeas corpus ad subjiciendum seeking custody of her two grandchildren, Geraldine Brooks and Brenda Brooks, who were alleged to be illegally detained by their mother, Bertha F. Walker. The writ was issued and served on Mrs. Walker who then filed a motion to quash the writ. This motion was overruled by the trial judge.

The evidence was heard by the trial judge who, in a written opinion, ruled that Mrs. Brooks was entitled to custody of the children. Mrs. Walker thereafter filed a motion for a new trial, which was denied, and a final order was entered awarding custody to Mrs. Brooks. We granted Mrs. Walker a writ of error.

Three assignments of error are presented for our consideration:

(1) That the trial court erred in overruling Mrs. Walker's motion to quash the writ of habeas corpus.

(2) That the court erred in awarding custody of the children to Mrs. Brooks.

(3) That the court erred in denying Mrs. Walker's motion for a new trial.

The basis of the motion to quash the writ was that the Circuit Court of Hanover County, where Mrs. Brooks resided, was without authority to issue the writ and direct service thereof in Louisa County, where Mrs. Walker resided and where, as it was alleged, the children were illegally detained.

The statutory authority for the issuance and return of writs of habeas corpus ad subjiciendum is found in Code, § 8-596 and § 8-598, as follows:

"§ 8-596. When and by whom the writ granted; what petition to contain.—The writ of habeas corpus ad subjiciendum shall be granted forthwith by any circuit court or corporation court, or any judge of either in vacation, to any person who shall apply for the same by petition, showing by affidavits or other evidence probable cause to believe that he is detained without lawful authority. *Such petition shall enumerate any and all previous applications of like nature and their disposition.*

"*Subject to the provisions of § 17-97 of the Code of Virginia only (1) the circuit court or corporation court or any judge of either in vacation of the county or city in which the petitioner is detained or (2) the court or any judge thereof in vacation which entered the original judgment order of conviction or convictions complained of in the petition shall have authority to issue writs of habeas corpus.*"

"§ 8-598. How directed and returnable.—The writ shall be directed to the person in whose custody the petitioner is detained and shall be made returnable as soon as may be before the court or judge ordering the same, or any other of such courts or judges.

*"And it is further provided that in the event the allegations of illegality of the petitioner's detention present a case for the determination of unrecorded matters of fact relating to any previous judicial proceeding, such writ, if issued, shall be made returnable before the court in which such judicial proceeding occurred."*

The italicized portions of the two code sections were added by admendments adopted by the General Assembly in 1958, (Acts of Assembly 1958, Chapter 215).

Prior to the 1958 amendments, writs of habeas corpus ad subjiciendum could be issued by *any* circuit or corporation court, or *any* judge thereof in vacation, and they could be made returnable to *any* circuit or corporation court, or the judges thereof. This was true in all types of cases where issuance of the writ was appropriate, including those where the petitioners were detained under criminal process as well as those involving custody of children.

It is Mrs. Walker's contention that, as a result of the amendment to § 8-596, only the Circuit Court of Louisa County, or the judge thereof in vacation, had the authority to issue the writ in question in this case.

We cannot agree with this contention.

A careful examination of the 1958 amendments to § 8-596 and § 8-598 shows clearly that they were intended by the legislature to apply only to those cases involving petitioners held under criminal process. The authority of *any* circuit or corporation court, or *any* judge thereof in vacation, to issue writs of habeas corpus in child custody cases, and to make such writs returnable to *any* circuit or corporation court, or the judges thereof, was left unimpaired.

It was not error, therefore, for the trial judge to overrule Mrs. Walker's motion to quash the writ.

■ We turn now to the primary question in this case, that is, with whom, under the evidence, should the custody of the two children be lodged?

The evidence presented to the trial judge shows that Bertha F. Walker was first married to Thomas M. Brooks, the son of the petitioner, Virginia L. Brooks. Four children were born of the marriage of Bertha and Thomas: Patsy, who was 14 years of age at the time

of the filing of the petition, Tommy, 13 years of age, and the two children involved in this case, Geraldine, 10 years of age, and Brenda, 9 years of age.

Thomas Brooks was killed in an automobile accident on June 24, 1950. Bertha placed her two older children with her mother and, in September, 1951, she and the two younger children went to stay with her mother-in-law, Mrs. Brooks, in Hanover County.

It soon became necessary for Bertha to seek employment outside of Hanover County. Mrs. Brooks testified that Bertha asked her to take Geraldine and Brenda and said that she would give Mrs. Brooks a written agreement allowing her to keep them and stating that Bertha would not take them back. Bertha testified that she merely requested Mrs. Brooks to keep the children so that she could go to work, and denied that she had given them to Mrs. Brooks. In any event, no agreement was ever signed by Bertha.

In 1953, Bertha married Roy Carneal, from whom she obtained a divorce in 1956. On December 24, 1957, she married Melvin H. Walker and the newly-married couple took Bertha's two older children to live with them in their home in Louisa.

Geraldine and Brenda continued to live with Mrs. Brooks. During their stay in the Brooks home, Bertha visited them there and also took them from the home for visits with her. She sent them gifts and bought them clothes. She testified that for a period of a year she sent Mrs. Brooks $10.00 each week for the children's support, but terminated this payment when Mrs. Brooks refused to permit Bertha's father to assume the children's care and custody. Mrs. Brooks denied that she had received any money for support from Bertha.

In August, 1959, Geraldine and Brenda visited in the Walker home in Louisa. Brenda showed her mother a large bruise on her leg and said that Mrs. Brooks had struck her with a broom-handle. Bertha took Brenda to a physician for treatment and then refused to return the children to Mrs. Brooks. The present litigation over the custody of the children then ensued.

Mrs. Brooks was 59 years of age at the time of the hearing in the trial court, was separated, but not divorced, from her husband and had a monthly income of only $66.00 and "some small savings."

Mrs. Walker was 33 years of age at the time of the hearing. Her husband, who was 44 years old, earned between $6,000.00 and $7,000.00 annually. He testified that he was able and willing to support all of Bertha's children.

Other testimony in the case vouched for Mrs. Walker's ability as a housewife and the good care given the children in the Walker home.

Geraldine and Brenda have been permitted to live with their mother and step-father throughout this protracted legal dispute.

In determining the difficult question with which we are presented, it is well to bear in mind that Mrs. Brooks rests her claim to custody of Geraldine and Brenda on two grounds, first, that Mrs. Walker gave the children to her, and second, that Mrs. Walker is an unfit person to rear the children.

We are not unmindful of the fact that the trial judge found that Mrs. Walker had relinquished the custody of the children to Mrs. Brooks. We are equally cognizant of the weight that such a finding is usually accorded, especially where it has been reached upon conflicting evidence.

But the trial judge's finding in this case overlooks the fundamental rules that apply to a contest of this nature which, although well-established and long-recognized, never lose their force through repetition.

These rules require that, as between a natural parent and a third party, the rights of the parent are, if at all possible, to be respected, such rights being founded upon natural justice and wisdom, and being essential to the peace, order, virtue and happiness of society. *Surber* v. *Bridges*, 159 Va. 329, 334, 335, 165 S. E. 508; *Judd* v. *Van Horn*, 195 Va. 988, 995, 996, 81 S. E. 2d 432; *Lawson* v. *Lawson*, 198 Va. 403, 408, 94 S. E. 2d 215; *Jones* v. *Henson*, 202 Va. 738, 744, 120 S. E. 2d 286.

In any such contest, the best interests of the child are paramount and form the lodestar for the guidance of the court in determining the dispute. This is true whether the rights of the parent are sought to be denied because it is claimed that they have been voluntarily relinquished or because the parent is unfit. In either case, the burden is upon the one seeking to sever the parent's right to show such relinquishment or unfitness by clear, cogent and convincing proof. *Merritt* v. *Swimley*, 82 Va. 433, 439, 440, 3 Am.St.Rep. 115; *Sutton* v *Menges*, 186 Va. 805, 810, 44 S. E. 2d 414; *Williams* v. *Williams*, 192 Va. 787, 792, 66 S. E. 2d 500; *Phillips* v. *Kiraly*, 200 Va. 345, 351, 105 S. E. 2d 855.

We think the evidence of Mrs. Brooks falls far short of meeting this test. Only her own statements, coupled with the children's long stay in her home, support her claim that Mrs. Walker voluntarily

transferred to her the custody of Geraldine and Brenda. Mrs. Walker denied any such agreement, and her actions in keeping in close contact with the children, in giving them presents and buying them clothes, in visiting them and having them visit her, and in gathering them into the bosom of her home when she thought they had been abused, negate the suggestion that she forever gave up her rights to her children to Mrs. Brooks.

As has been noted, the petition filed in this case alleged that Mrs. Walker was an unfit person to rear her children. This contention of Mrs. Brooks must, of course, be answered. It is answered simply by saying that the record fails to disclose one single fact that casts any reflection on Mrs. Walker's character, morals or fitness to have her children with her.

If the decision of the trial judge is upheld, the children involved in this case will be required to return to a home that, though not unfit, leaves much to be desired for the rearing of young female children, to be raised by a person for whom the record fails to show that they have any attachment, in circumstances where the financial resources are completely inadequate to provide for their needs.

On the other hand, if they are permitted to remain where they now are, they will be with their natural mother, in a complete family unit with their sister and brother and a step-father who is willing and able to assume the burden of their care as if they were his own.

We think this latter course is the wiser course, and that the evidence overwhelmingly points to the children's best welfare being most adequately served thereby.

Having reached this conclusion it is unnecessary for us to consider the assignment of error relating to the refusal of the trial judge to grant a new trial.

Accordingly, the order of the lower court will be reversed and the case remanded with directions that an order be entered awarding custody of Geraldine and Brenda Brooks to Bertha F. Walker.

*Reversed and remanded.*