**Salem**

MARIE B. MASON

v.

RUBY D. MOON

No. 1522-88-3

Decided October 24, 1989

COUNSEL

A. David Hawkins (Overbey, Overbey, Hawkins & Slez, on brief), for appellant.

Gregory P. Cochran (Caskie & Frost, on brief), for appellee.

OPINION

**COLEMAN, J.**—This appeal involves a custody dispute between a child's natural mother and paternal grandmother. The trial court awarded custody to the grandmother after finding that the presumption favoring a natural parent over a nonparent had been re-

butted by proof of extraordinary circumstances, including proof that the mother had voluntarily relinquished custody of her child. The mother, Marie B. Mason, has appealed those findings and the custody ruling. We find no evidence to support the conclusion that the mother relinquished her right to custody of her daughter. We also find that the "extraordinary circumstances" relied on to support the custody award are insufficient to deprive an otherwise fit parent of custody of her child in favor of a grandparent. Accordingly, we reverse the trial court's decision.

Victor Moon and Marie Moon (Mason) were married on October 9, 1981. A daughter, Crystal Moon, was born on April 11, 1984. After the child's birth, Ruby Moon, the child's paternal grandmother, primarily cared for Crystal during the day while the parents worked.

Marie and Victor Moon separated in July 1986, and executed a voluntary separation agreement which granted custody of the child to Marie Moon. Several weeks later the parties signed an amended agreement which transferred custody to Victor Moon with visitation to Marie Moon. On September 6, 1987, at a public parking lot while delivering Crystal to her mother for a visitation, Victor Moon assaulted Marie Moon's boyfriend, Billy Robert Mason, with a firearm. Mason, who had driven Marie Moon to the parking lot, obtained a gun from his vehicle and shot and killed Victor Moon. Thirteen days later Marie Moon and Billy Mason were married. The mother and the paternal grandmother, Ruby Moon, both filed petitions for custody of Crystal. The grandmother was granted temporary custody and has had Crystal in her continuous care throughout these proceedings.

The trial court delayed the permanent custody determination to consider what affect Billy Mason's prosecution for murder would have upon Marie Mason's situation. Billy Mason was acquitted of murdering Victor Moon based upon a claim of self defense. Marie Mason and Billy Mason reside together as husband and wife.

At the custody hearing the trial court considered the testimony of a number of witnesses for both parties and two investigative reports prepared by a counselor with the Campbell County Department of Social Services. The reports indicated that Marie Mason was a suitable parent capable of rearing her daughter and that her home provided an adequate environment in which to raise

a child. In her report the counselor expressed concern about the psychological effect that living and growing up in the Mason's home with her father's killer might have upon the child. Other than raising concern about the situation, neither the investigation nor the evidence of either party included a psychological evaluation of the child. As a result, there was no evidence of the possible effect, including its severity or duration, upon the child's mental health of having witnessed her father's death. Likewise, there was no evidence that addressed the effect, if any, upon the child of being separated from her mother or the need for counseling under either alternative.

"In all child custody cases, including those between a parent and nonparent, 'the best interests of the child are paramount and form the lodestar for the guidance of the court in determining the dispute.'" *Bailes v. Sours*, 231 Va. 96, 99, 340 S.E.2d 824, 826 (1986) (quoting *Walker v. Brooks*, 203 Va. 417, 421, 124 S.E.2d 195, 198 (1962)). In custody disputes between a natural parent and a nonparent, the law presumes the best interest of the child will be served when in the custody of the natural parent. *Id.* at 100, 340 S.E.2d at 827. Based on this presumption, "the rights of the [natural] parents may not be lightly severed but are to be respected if at all consonant with the best interest of the child." *Wilkerson v. Wilkerson*, 214 Va. 395, 397, 200 S.E.2d 581, 583 (1973). To overcome the strong presumption favoring a parent, the nonparent must adduce by clear and convincing evidence that: (1) the parents are unfit; (2) a court previously has granted an order of divestiture; (3) the parents voluntarily relinquished custody; (4) the parents abandoned the child; or (5) special facts and circumstances constitute extraordinary reasons to take the child from the parents. *Bailes*, 231 Va. at 100, 340 S.E.2d at 827; *see Smith v. Pond*, 5 Va. App. 161, 163, 360 S.E.2d 885, 886 (1987); *Ferris v. Underwood*, 3 Va. App. 25, 28, 348 S.E.2d 18, 19-20 (1986).

When determining whether the nonparent's evidence is sufficient to rebut the presumption in favor of granting custody to a natural parent, the trial court must consider all the evidence before it. *See Venable v. Venable*, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986). If the presumption favoring parental custody is rebutted, the natural parent or parents seeking custody bear the burden of showing that their having custody is in the best

interest of the child. *Smith*, 5 Va. App. at 163, 360 S.E.2d at 886. On appeal, the trial court's findings, particularly when the evidence is heard *ore tenus*, are entitled to great weight and will not be disturbed on appeal unless plainly wrong or unsupported by the evidence. *Bailes*, 231 Va. at 100, 340 S.E.2d at 827..

The trial court found that the grandmother had rebutted the presumption in favor of Marie Mason, who was found to be a fit parent, by showing that (1) Marie Mason had voluntarily relinquished her right to custody by signing the separation agreement which provided that Victor Moon would have custody, and (2) special facts and circumstances existed in that, if placement was with Marie Mason, the child would be residing in the home with the person who killed her father. The court ruled that a placement in the home with Marie Mason created a potential of psychological or emotional harm to the child and constituted an extraordinary reason to take the child from Marie Mason.

Although the trial court found that Marie Mason was a fit parent, it reasoned that the best interest of the child would be served by granting custody to the grandmother because the child had been in her continuous care since birth. The trial court noted that while Billy Mason's killing of Victor Moon was not criminal, it could not determine the possible psychological effect upon the daughter of moving into the same household with the person who had killed her father. The trial court stated that since it had no evidence that living with Billy Mason would not have harmful psychological effects on the daughter and since no evidence was presented to counter the court's concern of possible effects, "for now" custody belonged with the paternal grandmother, Mrs. Moon. Thus, the trial court ruled that Marie Mason had the burden of going forward with evidence to establish that the child's best interest would be served by being with her rather than the grandmother.

After reviewing the record, we find that the grandmother failed to produce clear and convincing evidence of either a voluntary relinquishment or circumstances constituting an extraordinary reason to rebut the presumption in favor of Marie Mason having custody of her daughter, Crystal. Accordingly, the presumption that a parent is entitled to custody of his or her child over a nonparent still obtained and Marie Mason did not have the burden of proving that the child's best interest would be served by being with

her. We therefore reverse the trial court's ruling.

■ First, the trial court erred by holding that Marie Mason's voluntary assent to the amended separation agreement, which granted custody to Victor Moon, constituted voluntary relinquishment of custody. The trial court found that because Marie Moon agreed to this arrangement to facilitate her relationship with her boyfriend, Billy Mason, she voluntarily relinquished custody. A voluntary relinquishment occurs when a parent willingly agrees or consents to having their child placed in the custody of a nonparent. *See, e.g., Shortridge v. Deel*, 224 Va. 589, 299 S.E.2d 500 (1983). However, voluntary relinquishment does not encompass a custody agreement between two separating or divorcing spouses which voluntarily resolves a custody determination between them, even when the agreement may have facilitated another relationship. *See, e.g., Mousseau v. White*, 532 So. 2d 1023 (Ala. Civ. App. 1988). No credible evidence exists to support the trial court's finding that Marie relinquished custody of her daughter.

Second, the trial court's concern about possible adverse psychological effects upon the child from living with a stepfather who killed her natural father was not clear and convincing evidence sufficient to deprive Marie Mason of the presumption that she was entitled to custody. The evidence did not show an extraordinary reason to transfer to Marie Mason the burden of proving that the child's best interest would be served with her rather than the grandmother. In commenting upon the evidence, the trial court stated that it had no way of knowing what the psychological effects of the situation would be on the young girl, now age five. The trial court went on to say that Marie Mason should be granted custody of her daughter in the near future, but it would not do so until assured that "psychologically this child will not be scarred emotionally from a transfer of custody to her mother and her stepfather, her stepfather being the one who killed her father."

■ While the trial court's ruling reflects a conscientious concern about possible psychological problems for the child, there is no evidence that the potential for harm is great or long lasting or that Marie Mason cannot adequately help the child confront and accept the situation. While we share the concern of the trial court, such concern standing alone, unsupported by any evidence, does

not constitute an "extraordinary reason" for taking a child from her mother. *James v. James*, 230 Va. 51, 54, 334 S.E.2d 551, 553 (1985). The initial burden is on the nonparent to introduce clear and convincing evidence at trial of facts and circumstances which constitute an "extraordinary reason" for depriving a natural parent of custody of her or his child. *Patrick v. Byerley*, 228 Va. 691, 694, 325 S.E.2d 99, 101 (1985). The grandmother failed to do so. There is no credible evidence in the record which would indicate that granting custody of the child to Marie Mason would harm the child psychologically. *See Bailes*, 231 Va. at 98-99, 340 S.E.2d at 826 (giving great weight to a psychologist's testimony to the harmful psychological effects to the child if the natural mother were granted custody). The trial court could equally have inferred that separation from Marie Mason or awarding custody to a hostile or resentful grandparent might permanently scar the child. A parent and child will not be deprived of one another based on surmise and conjecture. The trial court's findings are unsupported by the evidence.

Accordingly, we reverse the trial court's decision and find that Marie Mason is entitled to custody of her daughter. On remand the trial court is directed to implement a plan to reestablish custody with the mother consistent with this opinion.

*Reversed and remanded.*

Moon, J., concurred.

Baker, J., dissenting.

I respectfully disagree with the finding of the majority. As stated in its opinion, the trial court's findings are entitled to great weight and ought not be disturbed on appeal unless plainly wrong or unsupported by the evidence. *See Bailes v. Sours*, 231 Va. 96, 100, 340 S.E.2d 824, 827 (1986); Code § 8.01-680. There is evidence in this record from which it reasonably can be inferred that prior to the death of her first husband (Mr. Moon), the child's mother (Mrs. Mason) voluntarily relinquished custody of the child to Mr. Moon knowing that it would be the child's paternal grandmother who would be caring for her. The record supports a finding that Mrs. Mason surrendered custody of the child prior to the entry of a divorce decree from Mr. Moon so she could live with Billy Robert Mason (Billy Robert), who subsequently shot and

killed Mr. Moon.

While we do not have the benefit of a transcript of the homicide trial, the agreed statement of facts contained in this record indicates that the only witnesses to the homicide were the three year old child, Mrs. Mason and Billy Robert, whom Mrs. Mason married thirteen days after Mr. Moon's death. Whether the child witnessed criminal homicide or merely the death of her father at Billy Robert's hands, the trial court was justified in believing that the risk of an adverse psychological effect on the child was too great to place the child in a home with Billy Robert.

In child custody cases the best interests of the child are paramount and guide the exercise of the trial court's discretion. The trial court sees and hears the witnesses as they testify and its decision ought not be reversed unless it is plainly wrong or without evidence to support it. *Gray v. Gray*, 228 Va. 696, 699, 324 S.E.2d 677, 679 (1985). In this case, the trial court did not need the opinion of an expert psychologist to conclude that there was sufficient likelihood of an adverse psychological effect on the child should she be required to live with the man who was the cause of her parents' separation and who she saw shoot and kill her natural father. In my judgment, the facts on this record support the finding that the risk of an adverse effect was too great to order that the child be returned to the care and custody of her mother; accordingly, I find no abuse of discretion by the trial court. Even if Mrs. Mason otherwise may be a fit person to have custody of the child, it does not follow that living with Billy Robert, whom she married thirteen days after he killed the child's father, is in the child's best interest. Accordingly, I would affirm the judgment of the trial court.