### Richmond

GUY L. ELDER

v.

ADDIE B. EVANS

No. 1312-91-2

Decided March 9, 1993

Counsel

Beverly D. Crawford (El-Amin & Crawford, P.C., on brief), for appellant.

Barbara G. Mason (Virginia Legal Aid Society, Inc., on brief), for appellee.

Opinion

**BENTON, J.**—This appeal arises from a child custody dispute between the child's natural father, Guy L. Elder, and a non-parent, Addie B. Evans. The juvenile and domestic relations district court granted custody of the child to Evans in September 1989. On the father's appeal to the circuit court, the trial judge heard the evidence *ore tenus* and held that "the interest of [the child] will be best served by granting her custody to Addie Evans." The trial judge granted the father reasonable visitation privileges. The father contends that the evidence was not clear and convincing that the child's best interests would be

served by placing her in Evans' custody. For the reasons that follow, we reverse the judgment.

The statement of facts and other documentary evidence proved that Catherine Franze gave birth to a child in 1982 while she and Elder were high school students. Elder initially denied paternity of the child and dropped out of school during the 1983-84 school year. The relationship between him and the mother became further strained when he decided he did not want to marry her.

Elder later acknowledged he was the father of the child but only kept "moderate" contact with the child. Mary Barner, a friend of the mother "testified that she began keeping the child along with the mother . . . when the child was 16 or 17 months old; that [the father] never tried to get custody of the child; that the only time [the father] did anything for the child was when he was called and sometimes, he wouldn't come to see about the child then; that [the father] never had an interest in the child until the issue of child support came up and had it not come up, he wouldn't have looked at the child." Approximately two years after the child's birth, the child's mother married. After the mother's marriage, visitation with the child "was made difficult" for the father. The father married in 1984.

In approximately 1986, the mother and child moved into the home of Addie and John Evans. After a year, the mother moved and left the child in the care of Addie Evans. Evans testified "that the child and her mother, Catherine Franze, came to live with her about five years ago; that at the request of Catherine Franze, six months later, she petitioned for custody of the child; and that [the father] never acted like a parent who cared for his child." The child's mother testified "that [the father] failed to provide for the child when she needed help; that . . . Evans came to her rescue when she needed help; and that she wanted . . . Evans to have custody of the child because she has treated her like a grandchild."

In 1989, Evans filed a petition in juvenile court for custody of the child. The father appealed to the circuit court the juvenile court's decision awarding custody to Evans. In relevant part, the circuit judge's order reads as follows:

> Upon the evidence heard, home studies filed, and arguments made; the Court doth find that the petitioner, Guy Elder, initially and for a substantial period denied paternity, accepted no parental

responsibility; that he has been and continues to be dilatory in his duty to support subject child. The Court further finds subject child is well adjusted in the custody of Mrs. Addie Evans, and that a strong parental bond has been established between Mrs. Evans and subject child.

Therefore the Court doth [find] that the best interests of this child . . . will be served by granting her custody to Mrs. Addie Evans and the Court doth so order. Petitioner, Guy Elder, shall have reasonable visitation with subject child.

The father argues that the law presumes that his right to custody of his child is superior to that of Evans, the non-parent, and further that the evidence did not overcome this presumption. Thus, the father argues that the trial judge erred in awarding custody to Evans because the evidence was not clear and convincing that the best interests of the child would be served by awarding custody to Evans. Evans argues that the father relies upon the wrong principle of law. She contends that because the father instituted a petition for custody of the child in an earlier proceeding and was denied custody by an order that he failed to appeal, he was not entitled to the parental custody presumption.

Although Evans contends that the father previously was denied custody, the statement of facts does not establish that previous custody and visitation disputes in juvenile court involved a non-parent. Evans presented no evidence upon which the trial judge could have concluded that the father ever sought to obtain custody of the child other than when the child was in the mother's custody or that the father otherwise had been divested of custody. The records from the juvenile court indicate that the father and mother have been in that court from time to time since 1984. The portion of the juvenile court file that was before the trial judge contains the following handwritten entries:

8-15-84   Parties present. Referred to DOSS for report. Cont. to 10-10-84.

10-10-84 Agreement has been reached by parents. See order. Cont. to 1-9-85 to discuss overnight visitation.

1-9-85   Parties present. Problems have existed with visitation. Arrangement in prior order are to be kept.

7-24-85 Parties present. Petition withdrawn.

3-18-87 Parties present. Referred to DOSS for report. Cont. to 4-15-87.

4-15-87 Mr. Slayton for father; Mother present. Mother to retain custody.

The handwritten entries do not establish whether the father filed a petition for custody.[1] At best, the handwritten entries prove that a petition of some kind was withdrawn on July 24, 1985. However, the content of the petition was not proved. The entry, "Mother to retain custody," does not prove that an order was entered on April 15, 1987, divesting the father of custody in favor of a non-parent. The record proves that Evans first filed a petition for custody of the child in 1989. The father appealed that decision first to the circuit court and now to this Court. Thus, the record contains no proof of an unappealed order in favor of a non-parent divesting the father of custody. Indeed, the trial judge made no finding that the father previously had been divested of custody.

When the juvenile court awards custody to one of the parents in a contest between the parents, *see Bailes v. Sours*, 231 Va. 96, 97, 340 S.E.2d. 824, 825 (1986), in a later contest between the non-custodial parent and a non-parent, where there has been no other intervening custody order, "the law presumes that the child's best interests will be served when in the custody of its parent.' " *Id.* at 100, 340 S.E.2d at 827 (quoting *Judd v. Van Horn*, 195 Va. 988, 996, 81 S.E.2d 432, 436 (1954)). As between the two natural parents of a child, a decree granting one of them custody of their child is not *ipse dixit* "an adjudication that the parent not receiving custody of the child is an unfit person to have its custody and does not amount to a severance of the parent and child relationship." *Judd*, 195 Va. at 994, 81 S.E.2d at 435. Such a decree establishes comparative custodial rights between only the natural parents because the child cannot be physically in two households. Upon the relinquishment of the custodial parent's rights, in a contest between the non-custodial parent and a non-parent, the parent's right to the custody of the child is revived. *Id.* at 994-95, 81 S.E.2d at 435. Thus, we conclude that the trial judge was required to

[1]    The actual documents that were filed in the juvenile court during the period from August 1984 to April 1987, apparently were not made a part of the record in the circuit court. It appears that the handwritten entries were the only evidence before the circuit court of the juvenile court proceedings during the period from August 15, 1984, to April 15, 1987.

give the father the benefit of the natural parent presumption in considering the evidence.

"In all child custody cases, including those between a parent and a non-parent, 'the best interests of the child are paramount and form the lodestar for the guidance of the court in determining the dispute.' " *Bailes*, 231 Va. at 99, 340 S.E.2d at 826 (quoting *Walker v. Brooks*, 203 Va. 417, 421, 124 S.E.2d 195, 198 (1962)). However, the principle is well established that "the rights of the parent are, if at all possible, to be respected." *Walker*, 203 Va. at 421, 124 S.E.2d at 198.

> In custody disputes between a natural parent and a nonparent, the law presumes the best interest of the child will be served when in the custody of the natural parent. Based on this presumption, "the rights of the [natural] parents may not be lightly severed but are to be respected if at all consonant with the best interest of the child." To overcome the strong presumption favoring a parent, the nonparent must adduce by clear and convincing evidence that: (1) the parents are unfit; (2) a court previously has granted an order of divestiture; (3) the parents voluntarily relinquished custody; (4) the parents abandoned the child; or (5) special facts and circumstances constitute extraordinary reasons to take the child from the parents.

*Mason v. Moon*, 9 Va. App. 217, 220, 385 S.E.2d 242, 244 (1989) (citations omitted). "The burden of showing the existence of circumstances which would deprive the father of the right to custody of his [child] is upon the parties opposing this right. Such evidence of unfitness must be cogent and convincing." *Judd*, 195 Va. at 996, 81 S.E.2d at 436 (citations omitted).

The trial judge made the following findings concerning the father:

> [T]he [father] initially and for a substantial period denied paternity, accepted no parental responsibility; that he has been and continues to be dilatory in his duty to support subject child.

Although the evidence proved that the father initially denied paternity of the child, the evidence also proved that, when the child was born, the father was a high school student. Moreover, the father later signed a declaration of paternity. The custody investigation report noted that the father "kept moderate contact with [the child] and contributed financially to her care until [her mother] married." In addition,

the report further asserts that the mother's marriage made contact difficult for the father. Significantly, the report alludes to the father's continuing interest in the child when it states that "[t]he custody of this child has been the subject of dispute between the two parents since [the child] was 2 years old."

Although the trial judge found that the father was dilatory in his duty to support the child, the record is sparse concerning the basis for that finding. The custody investigation report contains the statement that Evans pays for the child's medical costs and "estimates that she has received about $300.00 total from both parents over the past three years for [the child's] support." However, the record does not contain any indication that the father had been ordered to pay support to Evans. The record contains copies of checks from the father to the child's mother during that same period, showing various payments from 1986 to 1990. These checks were filed as exhibits in accordance with the trial judge's request during the evidentiary hearing in January 1990.[2] Thus, even if the trial judge credited Evans' report that she has received less than $300 total from both parents, the reasonable inference to be drawn from the evidence is that the money the father paid to the mother for the support of the child was not used by the mother for that purpose.

Finding that the "child is well adjusted in the custody of . . . Evans, and that a strong parental bond has been established between Mrs. Evans and subject child," the trial judge concluded "that the best interests of this child . . . will be served by granting her custody to . . . Evans and the Court doth so order." However, the trial judge did not make findings that the father was unfit. Indeed, the evidence of the father's fitness is dramatic. The father has stable employment, has been married for eight years, owns his home, and is financially able to support the child. The report of the social service agency was positive in all aspects of its evaluation of the father's home and family circumstances. The report concluded with the following evaluation:

> Based on worker's observation, Mr. Elder appears to be a concerned parent who is trying very hard to obtain custody of his daughter, in order that he can provide and care for her in his home.

---

[2] Although the juvenile court records indicate that the father has continually attempted to adjust visitation and custody orders vis-a-vis the mother, the records do not show that support payments were ever at issue.

His wife and son are very supportive of his decision to seek custody and as mentioned earlier, loves [the child] very much.

Although worker feels that the Elders can offer [the child] a good and loving home that is conducive of healthy growth and development, having no prior knowledge of the other home makes it unjust for worker to make a recommendation as to which home is more suitable for having custody of [the child].

■ "The rule of comparative best interests applied in child custody contests between parents is inapposite to contests between parent and non-parent." *Rocka v. Roanoke County Dep't of Public Welfare*, 215 Va. 515, 518, 211 S.E.2d 76, 78 (1975). Moreover, those deficiencies that can be attributed to the father in this case primarily existed when the child was first born and the father was in high school. "[W]hat is relevant is the [father's] fitness now." *Id.* at 519, 211 S.E.2d at 78. The record proved that the father is a caring and loving parent, that his family life is an appropriate place for the child, and that the child shows an ability to adapt to her father's current family. This case fits within the established rule that "the parent prevails unless the non-parent bears the burden of proving, by clear and convincing evidence, both that the parent is unfit and that the best interest of the child will be promoted by granting custody to the non-parent." *Rocka*, 215 Va. at 518, 211 S.E.2d at 78. "[A] fit parent with a suitable home has a right to the custody of his child superior to the rights of others." *Judd*, 195 Va. at 995-96, 81 S.E.2d at 436.

■ "[I]n the absence of a showing of unfitness of the parent, special facts and circumstances must be shown constituting an extraordinary reason for taking a child from its parent, or parents." *Wilkerson v. Wilkerson*, 214 Va. 395, 397-98, 200 S.E.2d 581, 583 (1973). This record contains no special facts or circumstances that would constitute an extraordinary reason to deny the father custody of his child. Accordingly, we reverse the judgment of the trial court granting custody to Evans and remand the case to the trial court for proceedings consistent with this opinion.

*Reversed and remanded.*

Elder, J., concurred.

Willis, J., concurring in part and dissenting in part.

I agree that the trial court erred in failing to afford Elder the parental presumption. I agree also that the evidence did not show that Elder was, at the time of these proceedings, an unfit parent. However, I find the case inappropriate for final decision by this court. I think that we should remand it to the trial court for determination under the proper standard of proof.

"[T]he best interests of the child are paramount and form the lodestar for the guidance of the court in determining the dispute." *Bailes v. Sours*, 231 Va. 96, 99, 340 S.E.2d 824, 826 (1986). In custody disputes between a natural parent and a non-parent, the law presumes that the best interests of the child will be served by parental custody. *Id.* at 100, 340 S.E.2d at 827.

Rebuttal of the parental presumption is not limited to a showing of parental unfitness. The court may consider other matters, including "special facts and circumstances [which] constitute extraordinary reasons to take the child from the parents." *Mason v. Moon*, 9 Va. App. 217, 220, 385 S.E.2d 242, 244 (1989).

Both the juvenile and domestic relations district court judge and the judge of the circuit court found that the child's best interests would be served by awarding custody to Ms. Evans. Their findings, though based upon an erroneous standard of proof, were based also upon observations of the parties and upon courtroom perceptions that we do not have before us. Wresting this young child from the only home that she has ever known and placing her in a strange, albeit loving, environment could strike her a severe and cruel blow. This is a decision that should be made by a trial judge on the scene, applying the proper standard of proof.