COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Coleman and Lemons
Argued by teleconference


ANDREW HURREN

                                        MEMORANDUM OPINION[*] BY
v.    Record No. 2167-98-3             JUDGE SAM W. COLEMAN III
                                             JUNE 8, 1999
JESSIE O. EPPERSON


            FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                      H. Selwyn Smith, Judge

        James L. Scruggs (Virginia Legal Aid
        Society, Inc., on briefs), for appellant.

        Elizabeth P. Doucette for appellee.


     This appeal involves a custody dispute between a child's

father, Andrew Hurren, and the child's maternal aunt, Jessie

Epperson.  The circuit court granted sole custody of the child to

Epperson with supervised visitation to Andrew Hurren.  On appeal,

Hurren contends that the trial court misapplied the law and

asserts that the evidence was insufficient to support the custody

and visitation order.  We find that the trial court applied an

incorrect legal standard in determining a custody dispute between

a parent and non-parent.  Accordingly, we reverse the custody

award, and remand for further consideration.  Consequently, we do

_____

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

not address whether the evidence is sufficient to support a custody award to Epperson, as a non-parent.

## BACKGROUND

Andrew Hurren and his wife Carolyn separated in May of 1997 after nineteen years of marriage. The Hurrens had two children one of whom, DJ, was four years old at the time of the separation and is the subject of this custody dispute.

At the time of the parents' separation, they both left their two children with the maternal grandparents where the Hurrens and their children had resided. During the marriage, Andrew Hurren had been very sporadically employed, being unemployed for the two and one-half years after DJ was born. The Department of Corrections relieved him from his most recent job as a guard after he was charged with assault and battery of his wife.[1] Due to Andrew Hurren's sporadic income, his child support payments were reduced to $30 per month. The parties agreed to a joint custody order with Carolyn having physical custody. Carolyn Hurren eventually ceased involvement with her children. During the months following the separation, Andrew Hurren had little contact with DJ. Also following their separation, Andrew Hurren had checked himself into a hospital for emotional problems; the medical records show he suffered from suicidal ideation and

---

[1]According to Andrew Hurren, he was reinstated after the charges were dropped but subsequently quit the job due to the pressures of his failing marriage.

-

frustration over his failing marriage and pressures of his job. At the time, he was living at the National Guard armory. Later, and at the time of the custody hearing, Hurren was living with and at the home of his girlfriend. Carolyn Hurren did not assume physical custody of DJ but instead left her with the maternal grandmother.

Due to the grandmother's failing health, Jessie Epperson, Carolyn Hurren's sister, increasingly had assumed the responsibility of caring for DJ. Epperson eventually brought both Hurren children into her home and filed a petition for their custody. Andrew Hurren also petitioned for sole custody, having previously agreed to joint custody. Due to bruises on DJ's legs, Andrew Hurren and Epperson each made counter charges of abuse against DJ by the other. During the pendency of the hearing, the parties agreed to temporarily transfer custody to the maternal grandmother without contact by either Epperson or Andrew Hurren.

As to Epperson's ability to care for DJ, the evidence proved that Epperson left her job in February of 1998 due to back problems. At the time of the June 25 custody hearing, she was unemployed and had filed for bankruptcy. While the maternal grandmother had temporary custody of DJ, Epperson had failed to forward child support payments to the grandmother from Andrew Hurren. Epperson testified that she did not take the money to the grandmother to prevent violating the no contact court order.

-

The circuit court granted Epperson custody of DJ and granted Andrew Hurren supervised visitation. Andrew Hurren appeals that order.

## ANALYSIS

"Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977) (cited in Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995)).

In child custody matters, the best interests of the child are paramount. See Bailes v. Sours, 231 Va. 96, 99, 340 S.E.2d 824, 826 (1986). However, in custody disputes between a parent and a non-parent, the law presumes that awarding custody to the parent serves the best interests of the child. See Bottoms, 249 Va. at 413, 457 S.E.2d at 104; Rocka v. Roanoke County Dept. of Welfare, 215 Va. 515, 518, 211 S.E.2d 76, 78 (1975); Elder v. Evans, 16 Va. App. 60, 65, 427 S.E.2d 745, 747 (1993). The presumption in favor of the parents is "strong" and "may not be lightly severed but [is] to be respected if at all consonant with the interest of the child." Mason v. Moon, 9 Va. App. 217, 220, 385 S.E.2d 242, 244 (1989); see Bottoms, 249 Va. at 413, 457 S.E.2d at 104.

A party may rebut the presumption in favor of the parent by establishing by clear and convincing evidence various

-

circumstances including parental unfitness.  See Bailes, 231 Va. at 100, 340 S.E.2d at 827.  If the non-parent rebuts the presumption favoring parental custody, the parent then bears the burden of showing that the child's best interest will be served, nevertheless, by the child's custody being awarded to the parent.  See Mason, 9 Va. App. at 220-21, 385 S.E.2d at 244.[2]

At trial, the trial judge twice stated the standard he applied in deciding the custody dispute of DJ.  Both times, the judge rejected Andrew Hurren's assertion that the law creates a presumption in favor of a parent over a non-parent having custody of a child.  Instead, he asserted that the law establishes an "inference that the . . . parents come first . . . insofar as . . . custody is concerned."  The trial court applied a much less stringent standard than the Supreme Court and this Court have articulated in order for a non-parent to prevail over a parent in a child custody dispute.  Accordingly, we find that the trial court erred by applying the less

---

[2]As appellant notes, however, a finding that the parent is unfit is not sufficient to support an award of custody to the non-parent.  The trial court must also determine that it would be in the best interest of the child to be in the custody of the non-parent.  This follows from the unfortunate fact that the custody-seeking non-parent could be less fit for parenting than the unfit parent.  See Rocka, 215 Va. at 518, 211 S.E.2d at 78 (stating that the parent prevails unless the non-parent proves both that the parent is unfit and that "the best interests of the child will be promoted by granting custody to the non-parent").

-

stringent "inference" favoring a parent in deciding the custody dispute.

Unless the evidence is such that, as a matter of law the trial judge would have reached the same conclusion had he applied the proper standard and higher burden of proof, we must remand the case for the trial court to reconsider the evidence under the proper standard. The record reveals numerous negative circumstances that weigh against awarding custody of DJ to Andrew Hurren and that favor restricting his visitation rights. Witnesses characterized Andrew Hurren's prior relationship with his children as violent, abusive, and distant. Uncontradicted evidence suggested that Andrew Hurren molested his older daughter. The evidence also showed that in the recent past Andrew Hurren demonstrated little interest in the well-being of his children. As to his ability and suitability to care for DJ, Andrew Hurren was living with a woman to whom he was not married at a residence in which he had no legal property interest.[3] Also, Andrew Hurren had more than once threatened suicide, and a psychiatric hospital recently had admitted him for suffering from suicidal ideation. His work history suggested that he had

---

[3]Although Andrew Hurren questioned the propriety of the trial court's consideration of his living arrangement, the effect a non-marital relationship has on a child is an appropriate consideration in a child custody dispute. See Brown v. Brown, 218 Va. 196, 199, 237 S.E.2d 89, 91 (1997).

-

trouble staying employed and was unable to earn sufficient income to support his children.

Nevertheless, the record also reveals circumstances that weighed against awarding custody of DJ to Epperson. Epperson failed to forward the child support checks to DJ's grandmother when the grandmother had temporary custody of DJ. Additionally, Epperson was unemployed and in bankruptcy. The trial judge had observed that in many respects the two homes offered equivalent living conditions for the child.

We cannot say that had the trial judge applied the proper standard and determined that it was in the child's best interest to grant custody of DJ to Andrew Hurren, that the decision would be reversible error. In other words, the weight of the evidence is not such that this Court can apply the correct standard and determine, as a matter of law, the trial court reached the right result. Accordingly, we reverse the trial court's order, and remand the case for review of the evidence under the proper standard.

<u>Reversed and remanded.</u>