COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Humphreys and Senior Judge Willis
Argued at Richmond, Virginia


NANCY A. HEY

v.      Record No. 2795-07-4

ARLINGTON COUNTY DEPARTMENT
  OF HUMAN SERVICES

CHRISTOPHER SLITOR
                                                    MEMORANDUM OPINION BY[*]
v.      Record No. 2796-07-4                 JUDGE ROBERT J. HUMPHREYS
                                                       DECEMBER 30, 2008
ARLINGTON COUNTY DEPARTMENT
  OF HUMAN SERVICES

LOUISE HEY

v.      Record No. 2840-07-4

ARLINGTON COUNTY DEPARTMENT
  OF HUMAN SERVICES


             FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                          James F. Almand, Judge

        Thomas P. Sotello (Carl A.S. Coan, III; Thomas P. Sotello PLC;
        Coan & Lyons, on briefs), for appellant Nancy A. Hey.

        Christopher Slitor, *pro se*.

        Raymond B. Benzinger (Law Office of Raymond B. Benzinger,
        P.C., on brief), for appellant Louise Hey.

        Jonnise M. Conanan; Mary Ellen Slugg, Guardian *ad litem* for the
        minor child (Office of the County Attorney; Ragland and Slugg, on
        briefs), for appellee.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Nancy A. Hey ("mother"), Christopher Slitor ("Slitor") and Louise Hey ("grandmother") appeal from a decision of the Circuit Court of Arlington County, which terminated mother's residual parental rights in her child ("child").  Mother claims that the circuit court erred (1) in holding that she failed to remedy the conditions that required child to be placed in foster care, (2) by allowing child's guardian *ad litem,* Janell Wolfe ("Wolfe"), to testify and to do so in narrative form and (3) by allowing Dr. Robert Marvin to testify.  Mother, joined by Slitor and grandmother, also argues that the circuit court failed to properly consider child's relatives as a reasonable alternative to foster care or adoption.  For the following reasons, we affirm the decision of the circuit court.

ANALYSIS

A.  The Testimony of the Guardian *Ad Litem*

Mother argues that the circuit court erred by allowing Wolfe to testify about what she observed while she was child's guardian *ad litem*.  Mother argued that Wolfe's testimony violated the Supreme Court of Virginia's "Standards to Govern the Performance of Guardians *ad litem* for Children."  Those standards state, "The [guardian *ad litem*] acts as an attorney and not a witness, which means that he or she should not be cross-examined and, more importantly, should not testify."  Standards to Govern the Performance of Guardians *Ad Litem* for Children, Intro. Com't. (2003), at http://www.courts.state.va.us/gal/gal_standards_children_080403.html.  We decline to address that issue, because even if the trial court erred by allowing Wolfe to testify, and to do so in narrative form, that error was harmless.

Virginia's harmless error statute, Code § 8.01-678, states:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.

Accordingly, "'[i]f, when all is said and done, [it is clear] that the error did not influence the [fact finder], or had but slight effect, the verdict . . . should stand.'" Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764 (1946)). Furthermore, when a court improperly admits evidence that is "merely cumulative" of other evidence that was properly admitted, such error is harmless. Freeman v. Commonwealth, 223 Va. 301, 316, 288 S.E.2d 461, 469 (1982).

Here, it is clear that Wolfe's testimony was merely cumulative and did not influence the fact finder. Other witnesses testified to everything that Wolfe testified to. The court made one reference to Wolfe's testimony in its holding. When holding that DHS made reasonable and appropriate efforts to strengthen mother's relationship with child, the court noted that Wolfe testified that, "the County had provided more services than she had ever seen." While the court may have relied on Wolfe's opinion, the record is full of testimony from numerous witnesses detailing the extensive services offered by DHS. Leslie Moran, a DHS social worker, specifically testified that DHS provided mother with more visitation opportunities than it provides in similar cases. Wolfe's opinion regarding the amount of services provided was merely cumulative of the other evidence properly in the record. Thus, it is clear that Wolfe's testimony "'did not influence'" or "'had but slight effect'" on the court's decision. Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764).

### B. The Testimony of Dr. Marvin

Mother next argues that the court erred by allowing Dr. Marvin to testify. Mother first argues that Dr. Marvin should not have been allowed to testify because DHS did not timely notify her of its intent to call Dr. Marvin as an expert witness. Pursuant to Rule 4:1(b)(4)(A)(i),

> A party may through interrogatories require any other party to
> identify each person whom the other party expects to call as an
> expert witness at trial, to state the subject matter on which the
> expert is expected to testify, and to state the substance of the facts

- 3 -

and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

Furthermore, Rule 4:1(e) provides that,

A party who has responded to a request for discovery is under a duty to supplement or correct the response to include information thereafter acquired in the following circumstances:

(1) A party is under a duty promptly to amend and/or supplement all responses to discovery requests directly addressed to . . . the identity of each person expected to be called as an expert witness at trial, the subject matter on which the expert is expected to testify, and the substance of the expert's testimony, when additional or corrective information becomes available.

Prior to the hearing, mother filed an interrogatory asking DHS to identify any experts that they intended to call at the hearing. DHS did not include Dr. Marvin in its response to mother's request, and it did not notify mother of its intent to call Dr. Marvin until over a month after the hearing began. Thus, mother argues that DHS violated its duty to notify her of expert witnesses.

Assuming *arguendo* that mother's position is correct and that DHS violated Rule 4:1, the circuit court's error in allowing DHS to present Dr. Marvin's testimony was harmless. During the argument as to whether Dr. Marvin should be allowed to testify, Mary Ellen Slugg ("Slugg"), child's guardian *ad litem*, stated that, should the court exclude Dr. Marvin's testimony, she would call him as an expert witness on behalf of child. Slugg explained that mother had not made any discovery requests to her and, thus, she was not bound to provide notice of her intent to call an expert witness under Rule 4:1. Slugg's argument is correct. Rule 4:1(b)(4)(A)(i) does not require parties to disclose all expert witnesses that they intend to call at trial. Rather, it only requires a party to disclose an expert if the other party has requested that they do so in an interrogatory. Mother never served Slugg with an interrogatory, and, thus, Slugg was not required to disclose her intent to call an expert witness. The Standards to Govern the Performance of Guardians *Ad Litem* for Children provides "The GAL should prepare, present

- 4 -

and cross-examine witnesses, offer exhibits, and provide independent evidence as necessary." Standards to Govern the Performance of Guardians *Ad Litem* for Children, Com't on Std. F (2003), at http://www.courts.state.va.us/gal/gal_standards_children_080403.html. Because Slugg could have presented Dr. Marvin as her own witness, the circuit court did not err in allowing him to testify without prior notice to mother.

Next, mother argues that the circuit court erred by allowing Dr. Marvin to testify in violation of Code § 8.01-375. Code § 8.01-375 provides that "[t]he court trying any civil case may upon its own motion and shall upon the motion of any party, require the exclusion of every witness." Prior to the hearing, both parties moved the court to exclude all witnesses. Mother argues that Dr. Marvin violated the rule by reviewing transcripts of another witness.

However, assuming that mother is correct, and that reviewing the transcript of a witness' testimony violates Code § 8.01-375, that violation does not automatically disqualify Dr. Marvin as a witness. "[A] circuit court has discretion to decide whether a witness who violates an exclusion order should be prohibited from testifying." Wolfe v. Commonwealth, 265 Va. 193, 213, 576 S.E.2d 471, 483 (2003). "Factors to be considered in resolving the question include whether there was prejudice to the defendant and whether there was intentional impropriety attributable to the prosecution. It is also pertinent whether the out-of-court comments concerned any substantive aspect of the case and whether they had any effect on the witness' testimony." Bennett v. Commonwealth, 236 Va. 448, 465, 374 S.E.2d 303, 314 (1988), cert. denied, 490 U.S. 1028 (1989).

In light of the Bennett factors, the circuit court did not abuse its discretion by allowing Dr. Marvin to testify. Mother conceded below that neither DHS nor Dr. Marvin acted in bad faith when Dr. Marvin reviewed the transcript of Dr. Doyle's testimony. Furthermore, there is no evidence that Dr. Marvin's review of Dr. Doyle's testimony prejudiced mother in any way.

All the questions posed to Dr. Marvin regarding Dr. Doyle's testimony could have been asked in the form of a hypothetical question regardless of whether Dr. Marvin had ever reviewed the testimony. Moreover, the circuit court offered to allow mother to recall Dr. Doyle as a witness after Dr. Marvin testified. Mother declined to do so. In light of those circumstances, we cannot say that the circuit court abused its discretion by allowing Dr. Marvin to testify.

### C. The Termination of Mother's Parental Rights

It is well settled that "[w]hen addressing matters concerning a child . . . the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). "Statutes terminating the legal relationship between parent and child should be interpreted consistently with the governmental objective of preserving, when possible, the parent-child relationship." Weaver v. Roanoke Dep't of Human Resources, 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980). The circuit court's judgment, "'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" M.G. v. Albemarle County Dep't of Soc. Servs., 41 Va. App. 170, 181, 583 S.E.2d 761, 766 (2003) (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

Code § 16.1-283(C) provides in pertinent part:

> The residual parental rights of a parent or parents . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . (2) [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Thus, in order to terminate mother's residual parental rights, the court must make three separate findings: (1) that termination is in the child's best interest, (2) that, without good cause, mother failed to remedy substantially the conditions that led to the child's foster care placement and (3) that DHS made reasonable and appropriate efforts to help her remedy those conditions.

The circuit court found that it is in child's best interests to terminate mother's residual parental rights. That finding is inherently intertwined with the court's finding that mother failed to remedy the circumstances that led to child's removal. Mother has a developmental disorder that prevents her from adequately responding to child's needs. Witnesses testified that mother's condition cannot be cured. Instead, she must learn techniques to compensate for her deficit. In the nearly two years leading up to the hearing, mother received extensive training from several social services groups and had even gone through an intensive, in-home training with social workers that she chose. At times, mother worked with social workers as much as 25 hours per week. During that time, mother was able to learn simple tasks like feeding and diapering. However, despite her best efforts, she was unable to learn how to respond to child's changing needs. An expert testified that, due to mother's developmental disorder, she is incapable of serving as child's primary caretaker. Other witnesses testified that, in order to keep up with child's development, mother would need constant, intense training. A DHS social worker explained that, by the time mother was able to master parenting child at one stage of development, child would have already progressed to the next stage of development.

In order to remedy mother's problems, DHS worked with mother and Slitor to identify and develop a primary caretaker for child. DHS suggested that mother and Slitor hire a full-time nanny who could assist mother and act as child's primary caretaker, but mother and Slitor failed to do so.

Although initially hesitant, Slitor eventually agreed to work towards becoming child's primary caregiver. However, the circuit court found that Slitor had not adequately shown that he was capable of providing the care that child requires. That finding is supported by the fact that Slitor admittedly has an anger problem and has struggled with severe depression and a drinking problem. Mother told a DHS social worker that, in the past, a dispute over his parents' estate had caused Slitor "to drink more and get angry." That incident led to him being hospitalized for three days for depression. Another DHS social worker testified that in order to provide adequate care to child, Slitor would still need "consistent and ongoing" instruction.

By failing to identify an adequate primary caregiver or hire a nanny, mother failed to remedy the problem that led to child's initial removal. That failure supports the circuit court's holding that the child's interests would best be served by the termination of mother's parental rights.[1]

Mother argues that her developmental disorder constituted "good cause" preventing her from remedying the circumstances that led to child's removal. However, we have previously addressed that issue in <u>Richmond Dep't of Soc. Servs. v. L.P.</u>, 35 Va. App. 573, 584, 585, 546

---

[1] In its holding, the circuit court specifically discussed the bond that child had formed with her foster parents and the trauma that might occur if child was taken from them. Mother argues that this type of "comparative best interests test" is improper when determining whether to terminate a biological parent's residual parent rights. It is true that "in custody disputes between a natural parent and a nonparent, the law *presumes* the best interests of the child will be served when in the custody of the natural parent," <u>Mason v. Moon</u>, 9 Va. App. 217, 220, 385 S.E.2d 242, 244 (1989) (emphasis added), and, to overcome the presumption favoring the parent, the non-parent must prove by clear and convincing evidence that: (1) the parents are unfit; (2) a court previously has granted an order of divestiture; (3) the parents voluntarily relinquished custody; (4) the parents abandoned the child; or (5) special facts and circumstances constitute extraordinary reasons to take the child from the parents, <u>Bailes v. Sours</u>, 231 Va. 96, 10, 340 S.E.2d 824, 827 (1986). However, Virginia courts have never addressed whether it is improper for a court to consider a child's attachment to her foster family in termination of parental rights cases under Code § 16.1-283(C)(2). It is not necessary to address that issue in this case, because the evidence was sufficient to support the circuit court's finding without considering child's relationship with her foster family.

S.E.2d 749, 754, 755 (2001), where we held that "a parent's mental deficiency that prevents her from caring for her child" does not constitute "'good cause' under Code § 16.1-283(C)(2)." Accordingly, we likewise hold that mother's developmental disorder does not constitute good cause.

Finally, mother argues that the circuit court erred in holding that DHS made "reasonable and appropriate efforts" to assist her in remedying her problems. "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 338-39, 417 S.E.2d 1, 4 (1992).

The record is replete with evidence that DHS made reasonable and appropriate efforts to assist mother. DHS initially arranged for mother to visit child twice per week, which is more often than in the typical case. DHS provided social workers from its office and from Comprehensive Health Investment Project to work with mother and Slitor during those visits to teach them parenting skills. When those visits became impractical because of child's uncontrollable crying, DHS attempted several different things to facilitate productive visits. DHS moved the visits to a local café, to mother's home, and to the foster parents' home. It also brought in an infant massage therapist to attempt to calm child. DHS continued trying new things until the J&DR court ordered it to stop the visits. DHS then worked with social workers chosen by mother who conducted intensive home training with mother and Slitor. That training began with visits twice per week and progressively increased until mother was receiving training for up to 25 hours per week. DHS discussed mother's developmental disorder with mother and Slitor and worked to help them identify a primary caretaker for child. In light of all of those

services offered by DHS, we cannot say that the circuit court was plainly wrong in finding that DHS made "reasonable and appropriate efforts" to assist mother.

For all of the foregoing reasons, we hold that evidence in the record supports the circuit court's findings (1) that the termination of mother's parental rights was in the best interests of child, (2) that mother failed to substantially remedy the circumstances that caused child's removal, and (3) that DHS made reasonable and appropriate efforts to assist mother. Therefore, we hold that the circuit court did not err by terminating mother's parental rights.

### D. The Consideration of Mother's Relatives as an Alternative to Adoption

Finally, mother, joined by Slitor and grandmother, argues that the circuit court failed to give proper consideration to granting custody of child to child's relatives. Code § 16.1-283(A) provides that, in a termination of parental rights case, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." "Before the court grants custody of a child, under the provisions of Code § 16.1-283(A) the Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465. DHS met its duty in this case, and the circuit court properly considered child's relatives.

After child was removed from mother's custody, DHS inquired with mother about relatives who could potentially serve as guardians for child. Grandmother was the only person that mother suggested. DHS presented extensive information about grandmother at the hearing. Grandmother was 79 years old at the time of the hearing in this case. She lives in Maine for half of the year and in Maryland during the rest of the year. While she is in Maryland, grandmother resides in an assisted living home that does not allow children. DHS ordered an "interstate compact home study" of grandmother's Maine home. That study recommended against placing

- 10 -

a child in that home.  Grandmother is a cancer survivor and has also had a series of minor strokes.  When a DHS worker asked grandmother who could care for child if grandmother was unable to do so, grandmother was unable to identify anyone, other than to ask if she could just give child back to mother.  We do not conduct a *de novo* review of the circuit court's decision with respect to custody.  See Sutherland v. Sutherland, 14 Va. App. 42, 44, 414 S.E.2d 617, 618 (1992).  The circuit court clearly considered the question of whether child's best interests would be best served by granting custody to Slitor or grandmother.  There is evidence in the record to support the trial court's findings in this regard, and, thus, we must affirm that decision.

Slitor also filed a petition for custody of child, and the circuit court considered him as an alternative guardian as well.  As noted above, DHS presented extensive evidence regarding Slitor's fitness to serve as child's primary caretaker.  In its holding, the circuit court specifically cited Slitor's anger, his depression, and his alcohol abuse as reasons why it did not believe that child's best interests would be served by being placed with Slitor.  In light of the evidence presented and the court's holding, it is clear that the circuit court considered Slitor as a potential guardian.

Based on the foregoing, we hold that DHS presented sufficient evidence to the court so that the court could properly evaluate child's relatives as alternatives to foster care.  The circuit court considered that evidence as it was required to do.  Thus, the court did not abuse its discretion by failing to consider child's relatives as alternatives to foster care.

CONCLUSION

For these reasons, we hold that evidence supports the circuit court's decision to terminate mother's parental rights and to refuse to place child with Slitor or grandmother.  Therefore, we hold that the court was not plainly wrong and we affirm its decision.[2]

<u>Affirmed.</u>

---

[2] Mother's motion to strike DHS's brief and DHS's motion to strike Slitor's reply brief are denied.