COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Frank
Argued at Alexandria, Virginia


FREDERICKSBURG DEPARTMENT
 OF SOCIAL SERVICES

v.    Record No. 1952-99-2

CLYDE BROWN AND JOYCE WILLIAMS

JOYCE WILLIAMS
                                        OPINION BY
v.    Record No. 1969-99-2      JUDGE ROSEMARIE ANNUNZIATA
                                       AUGUST 29, 2000
FREDERICKSBURG DEPARTMENT
 OF SOCIAL SERVICES

CLYDE BROWN

v.    Record No. 2008-99-2

FREDERICKSBURG DEPARTMENT
 OF SOCIAL SERVICES


        FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                  John W. Scott, Jr., Judge

        Timothy W. Barbrow (Joseph A. Vance, IV;
        Joseph A. Vance, IV & Associates, on briefs),
        for Fredericksburg Department of Social
        Services.

        David H. Beck for Joyce Williams.

        Robert J. Barlow for Clyde Brown.


     The issues in these consolidated appeals arise from a

decision of the Circuit Court of the City of Fredericksburg

denying a petition filed by the Fredericksburg Department of

Social Services District ("DSS") to terminate the parental rights

of Clyde Brown ("father") and Joyce Williams ("mother"), parents

of four minor children.  DSS's petition was denied on the ground that Code § 16.1-266(C) required the appointment of counsel for the parents prior to the hearing held in the Fredericksburg Juvenile and Domestic Relations District ("J&DR") Court in which the J&DR court approved entrustment agreements transferring legal custody from the children's maternal aunt, Nancy Conway ("aunt"), to DSS.  DSS appeals this decision.  The parents appeal the circuit court's finding that the entrustment agreements, entered into solely by aunt, were valid, as well as the court's placement of custody in DSS at the conclusion of the de novo appeal.  For the reasons that follow, we affirm, in part, and reverse, in part, the circuit court's decision.

### FACTS

On appeal, we review the facts in the light most favorable to the party prevailing below.  See Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).  On March 24, 1998, emergency removal petitions were filed by DSS against mother for the removal of her four children on the ground that they were abused and neglected.  The whereabouts of the father were unknown at that time.  For reasons unspecified in court documents, the J&DR court denied the petitions and relieved appointed counsel for the mother and father.  However, in a separate order, the court concomitantly placed temporary legal custody in the aunt,

physical custody in the mother, and issued a preliminary
protective order against the mother, ordering her to refrain from
abusive actions and to comply with all DSS requests and service
plans.

On April 29, 1998, the aunt, as the children's legal
custodian, signed four entrustment agreements, one for each
child, entrusting the children to DSS.  The agreements
transferred legal custody to DSS, thus allowing it to remove the
children from the mother's physical custody and place them in
foster care; the agreements did not provide for the termination
of parental rights or for a specific date for return of the
children to their mother.[1]  On June 16, 1998, the agreements were
approved by the J&DR court, upon DSS's petition, at a hearing at
which mother and father were present but not represented, as
counsel had not been appointed for them.[2]  DSS also sought and

---

[1] At this time and thereafter in the proceedings, the father
was incarcerated.

[2] Prior to the 1999 amendments, Code § 63.1-56 provided:

> Whenever a local board accepts custody of a
> child pursuant to a temporary entrustment
> agreement entered into under the authority of
> this section, except when the entrustment
> agreement between the parent or parents and
> the local department provides for the
> termination of all parental rights and
> responsibilities with respect to the child,
> such local board shall petition the juvenile
> and domestic relations district court of the
> city or county for approval of such agreement
> within a reasonable time, not to exceed
> thirty days, after it execution; however,
> such petition shall not be required when the
> agreement stipulates in writing that the

received approval of initial sixty-day foster care service plans with a goal of "return to parent," and an initial permanency planning hearing was set for hearing.[3]  The mother and father did not object to the order of June 16, 1998, approving the entrustment agreements, nor did they appeal it to the circuit court.

On November 16, 1998, DSS petitioned for a foster care review hearing because the mother was not in compliance with the DSS service plan and was, therefore, in violation the J&DR court's order.  In the petition, DSS did not ask the court to alter the previously approved service plan; rather, it reiterated the need for the children to stay in foster care until the mother

---

temporary entrustment shall be for less than ninety days and the child is returned to his home within that period.

[3] Code § 16.1-282(E) provides:

The court shall schedule a permanency planning hearing on the case to be held five months thereafter in accordance with § 16.1-282.1, except in the case of a child placed in permanent foster care after a hearing held pursuant to § 63.1-206.1, or within 30 days upon the petition of any party entitled to notice in the proceedings under this section when the judge determines there is good cause shown for such hearing.

complied with the J&DR court's orders.  On December 3, 1998, the court again approved the original service plan, this time over the objection of counsel for the mother.[4]

On March 26, 1999, DSS petitioned the J&DR court, filing new foster care plans together with petitions for permanent placement and petitions for termination of parental rights.[5]  The foster

_____

[4] The grounds for the objection were not noted in the record.

[5] Code § 16.1-283(C) provides:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> 1.  The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship.  Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition; or
>
> 2.  The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required

- 5 -

care goal was changed from "return to home" to adoption because, in addition to mother's failure to complete mandatory parenting classes, she became pregnant, thereby violating DSS's court-approved mandate that she use effective family planning. The parents were each appointed separate counsel to represent them in the termination proceedings. On April 22, 1999, the J&DR court granted involuntary termination petitions, which were subsequently appealed to the circuit court.

After argument by counsel for all parties, the circuit court found that the parents should have been appointed counsel at the J&DR court hearing which resulted in its approval of the entrustment agreements. On that ground, it ruled that the foundation for the termination proceedings was defective under the provisions of Code § 16.1-283(C), and denied the DSS's motion

<hr>

continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

to terminate parental rights.  It granted custody of the children to DSS at the conclusion of the proceeding.

### ANALYSIS

The issues raised here present mixed questions of law and fact which we review de novo.  See Fairfax County School Board v. Rose, 29 Va. App. 32, 37, 509 S.E.2d 525, 527 (1999) (en banc). The resolution of this case rests upon three issues:  1) whether the parents could challenge the approval of the entrustment agreements at the circuit court hearing; 2) whether the entrustment agreements entered into solely by aunt were valid; and 3) whether the circuit court could place the children with DSS without terminating the parents' residual parental rights.

### WAIVER OF PARENTS' CHALLENGE TO THE ENTRUSTMENT AGREEMENTS

DSS contends that the parents' challenge at the termination hearing to the J&DR orders approving the entrustment agreements was waived because the orders were entered as agreed orders with no objection noted to their entry, and because their entry was not appealed to the circuit court.  We disagree on the ground that entry of valid entrustment agreements was a mandatory jurisdictional requirement which had to be met before the court in this case could exercise its jurisdiction to adjudicate the petition filed by DSS to terminate parental rights.  As such, the question of their validity is an issue that cannot be waived.

"The term 'subject matter jurisdiction' refers to the power granted to the courts by constitution or statute to hear specified classes of cases."  Dennis Moore v. Commonwealth, 259

- 7 -

Va. 405, 409, 527 S.E.2d 415, 417 (2000).  The Supreme Court has distinguished this constitutionally or statutorily granted power from "[a] court's authority to exercise its subject matter jurisdiction over a case," which "may be restricted by a failure to comply with statutory requirements that are mandatory in nature and, thus, are prerequisite to a court's lawful exercise of [its] jurisdiction."  Id.  A challenge to a court's exercise of its subject matter jurisdiction in a given case is not waivable if the statutory requirements violated by the court are mandatory in nature, but is waivable if the statutory requirements in question are merely procedural.  See Avery v. Virginia Retirement System, ___ Va. App. ___, ___ S.E.2d ___ (2000) (en banc); Karim v. Commonwealth, 22 Va. App. 767, 775, 473 S.E.2d 103, 106 (1996) (en banc) ("An important consideration in interpreting the meaning of a statute is whether it is mandatory and jurisdictional or directory and procedural."); see also Dennis Moore, 259 Va. at 409, 527 S.E.2d at 417 (where the

exercise of subject matter jurisdiction is made dependant on compliance with certain explicit statutory requirements, the court has no power to adjudicate the cause when those requirements are not satisfied).  "A mandatory provision in a statute is one that connotes a command and the omission of which renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding . . . ."  Karim, 22 Va. App. at 775, 473 S.E.2d at 106-07 (internal quotation omitted).

We find that the court's exercise of subject matter jurisdiction was restricted by statutory prerequisites which are mandatory in nature, see Dennis Moore, 259 Va. at 409, 527 S.E.2d at 417, and that any challenge on that ground was therefore not waivable and may be raised at any time.  See Avery, ___ Va. App. ___, ___ S.E.2d ___.  Code § 16.1-241(A)(4) grants jurisdiction to J&DR courts in matters concerning the custody of children who are "the subject of an entrustment agreement entered into pursuant to § 63.1-56 . . . ." (emphasis added).[6]  By the plain

_____

[6] The statute provides, in pertinent part:

> [E]ach juvenile and domestic relations district court shall have, within the limits of the territory for which it is created, exclusive original jurisdiction . . . over all cases, matters and proceedings involving: The custody, visitation, support, control or disposition of a child:  . . . Who is the subject of an entrustment agreement entered into pursuant to § 63.1-56 or § 63.1-204 or

- 9 -

language of this statutory provision, a valid and effective entrustment agreement which meets the requirements set forth in Code § 63.1-56 must be executed before the court may adjudicate a petition for the termination of parental rights.

Because the jurisdiction of the circuit court to hear and decide the issues raised in DSS's petition to terminate parental rights is wholly derivative of that of the J&DR court, its power to adjudicate DSS's petition is coincident with that of the lower court.  See <u>Fairfax County Dept. of Family Serv's v. D. N.</u>, 29 Va. App. 400, 405, 512 S.E.2d 830, 832 (1999).  We hold that the parents did not waive their challenge to the validity of those agreements when the termination issue was tried <u>de</u> <u>novo</u> in the circuit court, because the question of whether requirements of Code § 16.1-241(A)(4) were met, and particularly whether the children before the court on the DSS petition to terminate appellants' parental rights were the subjects of a valid entrustment agreement, is jurisdictional in nature.  See <u>Avery</u>, ___ Va. App. ___, ___ S.E.2d ___ (a challenge to a court's exercise of its subject matter jurisdiction in a given case is not waivable if the statutory requirements violated by the court are mandatory in nature).  Furthermore, because the exercise of subject matter jurisdiction could not be waived by the parties in this case, we hold that the validity of the entrustment

_____

whose parent or parents for good cause desire
to be relieved of his care and custody.

Code § 16.1-241(A)(4) (emphasis added).

agreements was properly before the circuit court even assuming

the parents had entered an agreed order approving the execution

of the challenged agreements.

VALIDITY OF THE ENTRUSTMENT AGREEMENTS

The parents contend the entrustment agreements which the

aunt executed were invalid, noting that 1) although she had legal

custody of the children, physical custody was placed with the

mother; and 2) neither parent signed the entrustment agreements.

In addressing this issue, the circuit court found that the

hearing at which the J&DR court approved the entrustment

agreements constituted the "commencement of a case" in which the

parents could be subjected to the loss of residual parental

rights and responsibilities and, as such, the parents were

entitled to counsel pursuant to Code § 16.1-266(C).[7]  Because the

_____

[7] Code § 16.1-266(C) provides:

> Prior to the hearing by the court of any case
> involving a parent, guardian or other adult
> charged with abuse or neglect of a child or a
> parent or guardian who could be subjected to
> the loss of residual parental rights and
> responsibilities, such parent, guardian or
> other adult shall be informed by a judge,
> clerk, or probation officer of his right to
> counsel and be given an opportunity to:
>
> 1.  Obtain and employ counsel of the
> parent's, guardian's or other adult's own
> choice; or
>
> 2.  If the court determines that the parent,
> guardian or other adult is indigent with the
> contemplation of the law pursuant to the
> guidelines set forth in § 19.2-159, a
> statement substantially in the form provided

parents were not represented at this hearing, the circuit court held that the entrustment agreements were invalid and denied the petition to terminate parental rights.

While we affirm the court's denial of the petition to terminate parental rights, we do so on different grounds. We hold that the court erred in finding, under the facts of this case, that counsel for the parents was required at the time of the hearing in which the entrustment agreements were signed by the aunt and approved by the J&DR court, because neither parent "could be subjected to the loss of residual rights and responsibilities" at the time of that hearing. <u>See</u> Code § 16.1-266(C). The foster care plan concomitantly submitted by DSS for approval stated as its goal "return to home," not termination of parents rights and responsibilities. Indeed, no petition for termination of parental rights was either filed or pending at that time. In the absence of such a petition, the parents' residual parental rights could not be terminated. <u>See</u> Code § 16.1-283 (setting out the requirements for termination of residual parental rights); <u>Stanley v. Dept. of Soc'l Serv's</u>, 10 Va. App. 596, 601-02, 395 S.E.2d 199, 202 (1990) ("[b]efore the residual parental rights of an individual may be terminated, a

---

by § 19.2-159 and a financial statement shall be executed by such parent, guardian or other adult and the court shall appoint an attorney-at-law to represent him; or

3. Waive the right to representation by an attorney in accordance with the provisions of § 19.2-160.

- 12 -

separate proceeding must be conducted upon the filing of a petition specifically requesting such relief (emphasis added)), aff'd, 242 Va. 60, 405 S.E.2d 621 (1991). Appellants' parental rights were placed at risk only after the hearing. The later petition to terminate those rights was based on appellants' subsequent conduct. In sum, the loss of their parental rights at the hearing in which the entrustment agreements were signed and presented to the court for approval was neither anticipated nor possible.

Despite the erroneous reasoning of the court, we may affirm its decision "when it has reached the right result for the wrong reason." Twardy v. Twardy, 14 Va. App. 651, 657, 419 S.E.2d 848, 851 (1992). Code § 63.1-56 requires that an entrustment agreement be entered by either a "parent" or a "guardian." The aunt is clearly not the former, and under Virginia law she cannot be found to enjoy the legal status of the latter. See In Re O'Neil, 18 Va. App. 674, 679, 446 S.E.2d 475, 479 (1994) (in adjudicating legal custodians' petition to be appointed guardians of a child, while "[t]he term 'guardian,' is not defined by any statute in this Commonwealth, nor does any statute or court decision in this Commonwealth adequately distinguish guardianship and custody . . . it is certain that there is a distinction between the two" (emphasis added)). Furthermore, the distinction between the two terms is maintained in various sections of the Code where "legal custodian" and "guardian" are referred to separately. See, e.g., Code § 16.1-228 (defining an abused or

neglected child, in part, as one who is without care due to the unreasonable absence of a "parent, guardian, legal custodian or other person").  See also, e.g., Code § 16.1-227(3); Code § 16.1-241.2(C); Code § 16.1-247(A); Code § 16.1-250(C); Code § 16.1-250.1.  "[W]e . . . assume that the legislature chose, with care, the words it used when it enacted the relevant statute and we are bound by those words as we interpret the statute."  City of Virginia Beach v. ESG Enterprises, Inc., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (citation omitted).

Based on the plain language of Code § 63.1-56, we hold that the aunt did not have authority to enter into an entrustment agreement with DSS and that the agreements at bar are invalid and ineffective.  For this reason, we find the circuit court did not err in finding the entrustment agreements to be invalidly executed.

### CIRCUIT COURT'S GRANT OF CUSTODY TO DSS

The parents contend the circuit court erred in granting custody of the children to DSS upon denying DSS's petition to terminate their parental rights.  We agree.

At the time of the hearing in question, DSS had custody pursuant to the entrustment agreements signed by the aunt. Because the agreements were invalid, DSS's custody of the children could not be established by those agreements, and the court could not simply reinstate custody in DSS based on them.

Furthermore, DSS has identified no statutory provision, and we have found none, that arguably grants authority to the circuit

- 14 -

court to place custody of the children in DSS upon its denial of the petition to terminate parental rights under the facts of this case. The circuit court's authority, coincident with that of the J&DR court, to grant legal custody of minor children to local boards of social services is specifically and expressly granted under limited circumstances, none of which is applicable here. See, e.g., Code § 16.1-277.01 (allowing transfer of custody pursuant to the approval of an entrustment agreement); Code § 16.1-277.02 (allowing court to place custody in a department of social services pursuant to a petition for relief of care and custody); Code § 16.1-278.2 (defining procedures by which court can transfer custody of abused, neglected or abandoned children or children without parental care); Code § 16.1-278.3 (defining procedures for granting custody to DSS pursuant to petition for relief of care and custody of child); Code § 16.1-278.4 (elaborating on circumstances under which legal custody of children in need of services can be transferred); Code § 16.1-278.5 (defining circumstances under which DSS can assume legal custody of children in need of supervision); Code § 16.1-283 (describing circumstances under which termination of residual parental rights can occur). We accordingly find the court erred in placing custody in DSS upon its denial of DSS's petition to terminate parental rights. Pursuant to the J&DR court's order of March 24, 1998, the only remaining effective order in this case entered by a court with proper jurisdiction to

adjudge the issue, legal custody of the children resides in the aunt and physical custody in the mother.

For the reasons stated herein, we affirm, in part, and reverse, in part, the decision of the circuit court, and remand the case to the circuit court with instructions to remand to the J&DR court for further proceedings consistent with this opinion.

<u>Affirmed, in part,</u>
<u>and reversed, in part</u>.

- 16 -