COURT OF APPEALS OF VIRGINIA

Present:   Judges McClanahan, Petty and Senior Judge Fitzpatrick
Argued at Alexandria, Virginia


ROBIN NORTON

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1815-06-4            JUDGE JOHANNA L. FITZPATRICK
                                                    NOVEMBER 13, 2007
CATHOLIC CHARITIES OF THE
  DIOCESE OF ARLINGTON, INC.


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Paul F. Sheridan, Judge Designate

       Helen Randolph for appellant.

       James A. Watson II (Sarah Louppe Petcher; Colten Cummins
       Watson & Vincent, P.C., on brief), for appellee.

       Lisa Purdy, Guardian *ad litem* for infant children.


       Robin Norton (mother) appeals a decision of the trial court terminating her residual parental

rights, pursuant to Code § 16.1-283(C)(2), to her five minor children, G.P, N.P, E.P, T.P, and M.L.,

on numerous grounds.  Because we find both the juvenile and domestic relations district court (J &

DR court) and the trial court lacked jurisdiction to consider the petitions filed by Catholic Charities

of the Diocese of Arlington, Inc. (Catholic Charities), seeking termination of mother's residual

parental rights under Code § 16.1-283(C)(2), we do not address the remaining questions raised by

mother.  For the following reasons, we reverse and remand.[1]

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] Mother raises the additional questions of whether the trial court erred in finding (1) it was
in the best interests of the children to terminate her parental rights; (2) she failed to substantially
remedy the conditions which led to her voluntarily placing her children with Catholic Charities; and
(3) Catholic Charities provided reasonable assistance to her as required by statute designed to help
her substantially remedy the conditions which led to the voluntary relinquishment of her children.

<u>Waiver Issue Raised by Appellee</u>

Initially, we reject the contention of Catholic Charities and the guardian *ad litem* that because mother failed to raise the jurisdictional question before the trial court, she waived it for appellate review.

In <u>Fredericksburg Dep't of Soc. Servs. v. Brown</u>, 33 Va. App. 313, 533 S.E.2d 12 (2000), we held that "entry of valid entrustment agreements was a mandatory jurisdictional requirement which had to be met before the court . . . could exercise its jurisdiction to adjudicate the petition filed by [the agency] to terminate parental rights. As such, the question of their validity is an issue that cannot be waived." <u>Id.</u> at 319, 533 S.E.2d at 15. In so ruling, we found as follows:

> [T]he court's exercise of subject matter jurisdiction was restricted by statutory prerequisites which are mandatory in nature, and that any challenge on that ground was therefore not waivable and may be raised at any time. Code § 16.1-241(A)(4) grants jurisdiction to J & DR courts in matters concerning custody of children who are "*the subject of an entrustment agreement entered into pursuant to § 63.1-56 . . . .*" By the plain language of this statutory provision, a valid and effective entrustment agreement which meets the requirements set forth in Code § 63.1-56 must be executed before the court may adjudicate a petition for the termination of parental rights.
>
> Because the jurisdiction of the circuit court to hear and decide the issues raised in [the agency's] petition to terminate parental rights is wholly derivative of that of the J &DR court, its power to adjudicate [the agency's] petition is coincident with that of the lower court. We hold that the parents did not waive their challenge to the validity of those agreements when the termination issue was tried *de novo* in the circuit court, because the question of whether the requirements of Code § 16.1-241(A)(4) were met, and particularly whether the children before the court on the [agency's] petition to terminate appellants' parental rights were the subjects of a valid entrustment agreement, is jurisdictional in nature.

<u>Id.</u> at 320-21, 533 S.E.2d at 15 (footnote omitted) (citations omitted). Accordingly, we do not find mother waived this issue by failing to raise it below, and therefore, we consider it on appeal.

Mother gave birth to her first child in 1995 when she was seventeen years old, and had four additional children by 2003. In July 2004 she decided that she could no longer adequately provide for them because of psychological and financial difficulties. She testified that she did not want to give them up, but she "just knew [she] needed them to go into foster care while [she] got back on [her] feet." As a result, on July 12, 2004, she signed temporary entrustment agreements for each child, and agreed to allow Catholic Charities to place her children in temporary foster care for a period not to exceed eighty-nine days, and specifically no later than October 8, 2004. The agreements did not provide for termination of mother's residual parental rights nor did they transfer custody of the children to Catholic Charities.

On September 3, 2004, mother signed initial sixty-day foster care service plans for each child with a custody/placement status for each child to be placed in foster care upon "Parent(s) Request," and a goal for each child of "Return Home," with a target date of "12/04." The temporary entrustment agreements signed by mother on July 12, 2004 expired on October 8, 2004. The record before us does not contain any orders approving the temporary entrustment agreements, any orders approving the initial sixty-day foster care service plans, or any order transferring custody of the children in the fall of 2004 to Catholic Charities.[2]

In April 2005, Catholic Charities prepared and filed foster care service plan reviews for each child, changing the goal to adoption. Mother objected to those plans by signing a statement on April 25, 2005, as to each plan, indicating that she did not agree with the new goal of

---

[2] We recognize that Catholic Charities asserted during oral argument that the J & DR court approved the temporary entrustment agreements and entered an order awarding temporary custody of the children to Catholic Charities. The record contains no documents to support Catholic Charities' assertions.

adoption for her five children and that she had "a goal of parenting these children and therefore do [sic] not wish to sign this Foster Care Plan and Review."

On May 10, 2005, mother signed permanent entrustment agreements as to each child surrendering all legal custody of the children to Catholic Charities and agreeing to the termination of her parental rights with respect to each child for the purpose of placing and consenting to their adoption.[3]  However, on May 23, 2005, mother signed a document on Catholic Charities letterhead, timely revoking the May 10, 2005 permanent entrustment agreements as to all five children.[4]  At that time, the children were not returned to mother and remained in foster care.

---

[3] We note that mother's signature does not appear on the line for a parent signature indicating that she understood she was signing a legal document and that she had been given the opportunity to consult with legal counsel of her choice before signing.

[4] Code § 63.1-1223, as it existed in May 2005, provided as follows:

> A valid entrustment agreement terminating all parental rights and responsibilities to the child shall be revocable by either of the birth parents until (i) the child has reached the age of twenty-five days and (ii) fifteen days have elapsed from the date of execution of the agreement.  In addition, a valid entrustment agreement shall be revocable by either of the birth parents if the child has not been placed in the home of adoptive parents at the time of such revocation.  Revocation of an entrustment agreement shall be in writing and signed by the revoking party.  The written revocation shall be delivered to the child-placing agency or local board to which the child was originally entrusted.  Delivery of the written revocation shall be made during the business day of the child-placing agency or local board to which the child was originally entrusted, in accordance with the applicable time period set out in this section.  If the revocation period expires on a Saturday, Sunday, legal holiday or any day on which the agency or local board is officially closed, the revocation period shall be extended to the next day that is not a Saturday, Sunday, legal holiday or other day on which the agency or local board is officially closed.  *Upon revocation of the entrustment agreement, the child shall be returned to the parent revoking the agreement*.

(Emphasis added).

On June 13, 2005, Catholic Charities filed petitions in the J & DR court pursuant to Code § 16.1-277.01[5] for approval of the foster care plans, for custody of the children with authority to place and consent for adoption, and pursuant to Code § 16.1-283(C)(2)[6] for termination of mother's residual parental rights as to all the children.

On November 9, 2005, the J & DR court terminated mother's parental rights to G.P., T.P, E.P, and N.P.  On December 2, 2005, the J & DR court terminated mother's parental rights to M.L.  Mother appealed the termination of her parental rights as to all five children.  The trial

---

[5] Code § 16.1-277.01 provides procedures for approval of entrustment agreements.

[6] Code § 16.1-283(C) provides in pertinent part as follows:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> *    *    *    *    *    *    *
>
> 2.  The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.  Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition.  The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

court held a hearing on April 24, 2006, and terminated mother's parental rights pursuant to Code § 16.1-283(C)(2) (as to M.L. by order dated June 23, 2006, and as to the other four children by order dated July 6, 2006).

Analysis

When the J & DR court terminated mother's parental rights to her five children on November 9, 2005 and December 2, 2005, no valid entrustment agreements existed with respect to any of those children. Based upon the record before us, the original temporary entrustment agreements expired in October 2004, and mother had properly and timely executed a written revocation of the permanent entrustment agreements on May 23, 2005. Thus, the mandatory jurisdictional requirement of a valid entrustment agreement for each child had to be met before the court could exercise its jurisdiction to adjudicate the petitions filed by Catholic Charities to terminate mother's parental rights to her children under Code § 16.1-283(C)(2). See Brown, 33 Va. App. at 319-21, 533 S.E.2d at 15; Code § 16.1-283(C)(2). This requirement is lacking in the instant case.

The children were initially placed in foster care as a result of temporary entrustment agreements entered into by mother, not as a result of court commitment or other voluntary relinquishment. While mother signed the initial temporary entrustment agreements and then permanent entrustment agreements with respect to the children, those agreements had either expired or been properly revoked by mother prior to the petitions being filed.[7] Catholic Charities conceded at oral argument that none of the other subsections of Code § 16.1-283 applied in this case as a basis for terminating mother's residual parental rights. The children

---

[7] At oral argument Catholic Charities suggested that the J & DR court had jurisdiction under Code § 16.1-283(C)(2) because the children were placed in foster care "as a result of a court commitment." The record establishes that the children were placed in foster care as a result of the entrustment agreements, not as a result of a court commitment.

were not alleged to have been abused and neglected or abandoned as set forth in subsections (B) and (D) of the statute, nor had mother previously had her parental rights terminated or committed a serious crime as set forth in subsection (E).

Accordingly, because there were no valid entrustment agreements in effect at the time the trial court terminated the mother's parental rights, it was without jurisdiction to adjudicate the petitions requesting termination of mother's parental rights as to all five children.

For the reasons stated, we reverse the trial court's decision granting the petitions filed by Catholic Charities, and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>