COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Humphreys and Millette
Argued at Chesapeake, Virginia


MARK BENNETT AND
  LISA BENNETT
                                                    MEMORANDUM OPINION* BY
v.         Record No. 1852-07-1                     JUDGE LeROY F. MILLETTE, JR.
                                                          AUGUST 12, 2008
ELIZABETH ANN BENNETT-SMITH


            FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                         S. Bernard Goodwyn, Judge

            Robert B. Jeffries (Law Offices of Diane Fener, P.C., on brief),
            for appellants.

            No brief or argument for appellee.

            No brief or argument by the child's Guardian *ad litem*.[1]


        Mark Bennett and Lisa Bennett (the Bennetts) appeal from a decision of the trial court

granting sole legal and physical custody of Raven Bennett (Raven) to her biological mother,

Elizabeth Bennett-Smith (the mother).  On appeal, the Bennetts contend the trial court lacked

subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act

(UCCJEA)[2] and erred by determining the parental presumption in favor of the mother was not

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Pursuant to Rule 5A:19(d), the Guardian *ad litem* notified the clerk's office of his
support of the mother in a letter dated January 11, 2008.

        [2] The Bennetts raise this argument for the first time on appeal to this Court.  Despite the
requirements of Rule 5A:18, this issue is not procedurally defaulted, as "[a] challenge to a
court's exercise of its subject matter jurisdiction in a given case is not waivable if the statutory
requirements . . . are mandatory in nature . . . ."  Fredericksburg Dep't of Soc. Servs. v. Brown,
33 Va. App. 313, 319, 533 S.E.2d 12, 15 (2000).

overcome. For the reasons that follow, we hold the trial court did not lack subject matter jurisdiction and affirm the judgment of the trial court.

The parties being fully conversant with the record, this memorandum opinion recites only those facts necessary to a disposition of the appeal. On appeal, we view the evidence in the light most favorable to the mother, the party prevailing below. Petry v. Petry, 41 Va. App. 782, 785-86, 589 S.E.2d 458, 460 (2003). Thus, we will "'discard the evidence' of [the Bennetts] which conflicts, either directly or inferentially, with the evidence presented by [the mother] at trial." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003) (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)).

On July 13, 2001, the mother gave birth to Raven in Kansas, where they remained and resided with the Bennetts, who are the father and stepmother of the mother. In February 2004, the mother left for Naval boot camp. The Bennetts agreed to care for Raven while the mother was at boot camp because the mother was not permitted to enlist in the Navy as a single mother. Accordingly, the mother petitioned the Probate Court of Johnson County, Kansas for Letters of Co-Guardianship granting the Bennetts co-guardianship of Raven. The probate court entered the co-guardianship order on February 5, 2004. After the mother finished boot camp and was stationed in Norfolk, Virginia, the Bennetts executed a Consent of Co-Guardians to Termination of Guardianship. On October 1, 2004, the Kansas court entered an Order Terminating Guardianship, which provided that "the reason for the creation of the Guardianship no longer exists." That same month, the Bennetts delivered Raven to the mother in Virginia.

On November 21, 2004, the mother married Raven's biological father, Bart Smith (Mr. Smith). The Bennetts were concerned that Mr. Smith, a registered sex offender, had contact with Raven in violation of the terms of his parole. Thus, the Bennetts petitioned the Juvenile and Domestic Relations District Court of the City of Chesapeake (Chesapeake JDR), seeking legal

custody of Raven and, more specifically, "entry of an *emergency order* awarding them temporary legal custody of [Raven] pending further hearing . . . ." (Emphasis added). On December 8, 2004, after a hearing on the Bennetts' petition, the Chesapeake JDR entered an order[3] granting the Bennetts temporary joint legal and physical custody of Raven and ordering them to return Raven to Virginia for an "evidentiary hearing on the pending petitions" set for April 6, 2005.[4]

On June 27, 2006, the Chesapeake JDR ordered that custody remain with the Bennetts, with liberal visitation to the mother. The mother appealed to the Chesapeake Circuit Court (trial court). On August 9, 2006, the Bennetts filed a motion asking the trial court to decline jurisdiction pursuant to Code § 20-146.18 on the ground that Virginia was an "inconvenient forum" under the UCCJEA.[5] The trial court denied the Bennetts' motion at the conclusion of its September 20, 2006 hearing.

On July 2, 2007, the trial court entered an order granting the mother custody of Raven with visitation to the Bennetts. The court outlined its findings as follows:

> In a custody case between a parent and a nonparent, which is what
> we have here, the court presumes that the child's best interest is in

---

[3] The December 8, 2004 order was not designated by either party for inclusion in the appendix. Though "we do not deem it our function to comb through the record," Fitzgerald v. Bass, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988), and "[i]t [is] assumed that the appendix contains everything germane to the questions presented[,] . . . [we] may, however, consider other parts of the record." Rule 5A:25(h).

[4] The hearing was subsequently continued from April 6, 2005 to September 7, 2005, then to December 6, 2005, again to June 7, 2006, and was finally set for June 27, 2006.

[5] "A court of this Commonwealth that has jurisdiction under [the UCCJEA] to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Code § 20-146.18(A). In considering "whether it is appropriate for a court of another state to exercise jurisdiction," the court "shall allow the parties to present evidence and shall consider all relevant factors." Code § 20-146.18(B).

being in the custody of the parent. The presumption may be rebutted by clear and convincing evidence . . . . [6]

Based upon the evidence presented, the home study investigation of the mother . . . and the updated oral report made at trial by the guardian ad litem, the court finds that the petitioning grandparents have not proven by clear and convincing evidence parental unfitness, a previous order of divestiture, a voluntary relinquishment, abandonment, or any special circumstances constituting an extraordinary reason for taking the child from its mother. . . .[7]

The Bennetts appealed to this Court, asserting the mother lost the parental presumption through her unfitness and voluntary relinquishment of custody while she was at Naval boot camp. They argue the parties therefore should have stood equally before the trial court in its determination of what custody arrangement was in Raven's best interest according to a preponderance of the evidence. On brief, for the first time, the Bennetts also contend the trial court lacked subject matter jurisdiction under the UCCJEA because Kansas had not declined to exercise its continuing and exclusive jurisdiction.

---

[6] Pursuant to Code § 20-124.2(B),

In determining custody, the court shall give primary consideration to the best interests of the child. . . . As between the parents, there shall be no presumption or inference of law in favor of either. *The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest. . . .*

(Emphasis added).

[7] In its ruling, the trial court also cited Bailes v. Sours, 231 Va. 96, 340 S.E.2d 824 (1986), which sets forth the factors that must be established by clear and convincing evidence to rebut the presumption favoring a parent over a non-parent.

For the first time on appeal, the Bennetts contend the Kansas order providing co-guardianship was a child custody determination. They assert Kansas obtained jurisdiction through entry of the Letters of Co-Guardianship and Order Terminating Guardianship (collectively, guardianship orders). They further argue that pursuant to the UCCJEA, Code § 20-146.1 et seq., Kansas retained continuing and exclusive jurisdiction over matters pertaining to Raven's custody and visitation. In making this argument, the Bennetts cite Code § 20-146.13(A): "*Except as otherwise provided in § 20-146.15*, a court of this Commonwealth that has made a child custody determination consistent with § 20-146.12 or § 20-146.14 has exclusive, continuing jurisdiction as long as the child, the child's parents, or any person acting as a parent continue to live in this Commonwealth."[8]  (Emphasis added).

Code § 20-146.15 authorizes temporary emergency jurisdiction if the child is present in this Commonwealth and the child has been abandoned or if an emergency necessitates protecting the child. The Bennetts acknowledge that "[b]ecause [the mother] was residing in Chesapeake, they initiated their [December 2004] petition there." At oral argument, counsel for the Bennetts conceded the Chesapeake JDR exercised jurisdiction pursuant to Code § 20-146.15 on the Bennetts' petition for an emergency order. However, the Bennetts argue, because the guardianship orders were previously entered in Kansas, the Chesapeake JDR was required to follow subsection C of Code § 20-146.15, which provides:

> If there is a previous child custody determination that is entitled to be enforced under this act, or a child custody proceeding has been commenced in a court of a state having jurisdiction under §§ 20-146.12, 20-146.13 or § 20-146.14, any order issued by a court of this Commonwealth under this section *must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction*. The order issued in this Commonwealth remains in

---

[8] Kansas, having also enacted the UCCJEA, has a substantially similar statute pertaining to exclusive, continuing jurisdiction:  K.S.A. 38-1349(a).

- 5 -

effect until an order is obtained from the other state within the period specified or until the period expires.

(Emphasis added).

Counsel for the Bennetts interpreted subsection C as follows:

It says that the order issued in this Commonwealth remains in effect until an order is obtained from the other state within the period specified or until the order expires. *And it's required to have an expiration date and that was not done. So the action of the court by failing to do that was in excess of its jurisdiction . . . .*

(Emphasis added).

When the Bennetts petitioned the Chesapeake JDR for custody of Raven in December 2004, they had a duty pursuant to Code § 20-146.20(A) to inform the court of any proceeding concerning Raven's custody, thereby advising the court whether it had initial child custody jurisdiction pursuant to Code § 20-146.12 or emergency jurisdiction pursuant to Code § 20-146.15. The purpose of this pleading requirement is to allow the court to determine whether a "child custody determination that is entitled to be enforced under this act [has been made or] a child custody proceeding has been commenced in a court of a state having jurisdiction." Code § 20-146.15. The Bennetts did not so advise the court in their initial pleading, the petition, or in an attached affidavit as required by the Code.

Neither the Chesapeake JDR nor the trial court was aware of any claim by the Bennetts that the Virginia courts lacked jurisdiction. In fact, everything the Bennetts did suggested the Virginia courts had initial child custody jurisdiction. The Bennetts filed their initial petitions in the Chesapeake JDR, seeking both legal custody and entry of an emergency order, and thereafter continued to litigate the custody matter in the Chesapeake JDR from December 2004 until June 27, 2006. When the mother appealed to the trial court and the Bennetts argued that Kansas was a more convenient forum, they did not argue that a child custody proceeding had been commenced

in Kansas.[9] Even when the custody matter was litigated in the trial court and the Bennetts introduced evidence of the temporary co-guardianship to establish that the mother relinquished custody or abandoned Raven, the Bennetts did not assert that a child custody proceeding had been commenced in Kansas.[10]

Finally, during the entire period from December 2004 until the trial court's July 2, 2007 order, the Bennetts never sought any relief in the Kansas courts. The Bennetts' position was that the Virginia courts had jurisdiction to determine Raven's custody until the trial court ruled against them and awarded custody to the mother.

In essence, the Bennetts now argue that their December 2004 petition was not a request for legal custody, but a request for a temporary emergency order. They concede the Chesapeake JDR had temporary emergency jurisdiction pursuant to Code § 20-146.15. However, the Bennetts contend that when the court failed to specify in the order a period of time to allow them to obtain an order from Kansas, to serve as an expiration date for its temporary emergency order, any subsequent order was in excess of its jurisdiction. We find this argument lacks merit.

"'[N]o litigant . . . will be permitted to approbate and reprobate – to invite error . . . and then to take advantage of the situation created by his own wrong.'" Manns v. Commonwealth, 13 Va. App. 677, 680, 414 S.E.2d 613, 615 (1992) (quoting Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988)). The Bennetts will not be permitted to file for custody in Virginia, fail to advise the Virginia courts of their position that a child custody proceeding had

---

[9] To the contrary, in the Bennetts' brief in support of their motion that the Virginia court decline jurisdiction under Code § 20-146.18, they asserted, "[t]here has not been any litigation in Kansas, so the Kansas court is not yet familiar with the facts and issues."

[10] The guardianship orders were offered for the first time as appendices attached to the Bennetts' brief on appeal to this Court.

previously been commenced in Kansas, litigate the custody matter in Virginia as if the Virginia courts had initial child custody jurisdiction, and then argue that Virginia courts only had temporary emergency jurisdiction that was lost when the Chesapeake JDR failed to provide in its order a period of time for the Bennetts to obtain a Kansas order.

At a minimum, the Chesapeake JDR had temporary emergency jurisdiction pursuant to Code § 20-146.15, which the Bennetts do not contest. At oral argument, counsel for the Bennetts stated, "I think you can justify what the juvenile court did in favor of [the Bennetts] on their petition."

A child custody determination made pursuant to Code § 20-146.15 may become a final determination in the court where it was entered or may be limited by the exercise of jurisdiction by a court in another state under the UCCJEA. One of the considerations distinguishing those alternatives is whether there is a previous child custody determination that is entitled to be enforced under the UCCJEA. There is no contention that the guardianship orders (which simply established and later *terminated* a temporary co-guardianship required by the mother's military service), constituted a previous custody determination that is entitled to be enforced under this act. Another consideration is whether a child custody proceeding has been commenced in a court of a state having initial child custody jurisdiction. The issue of whether entry of the Kansas guardianship orders constituted a child custody proceeding commenced in another state having jurisdiction was never addressed because the Bennetts litigated the matter of Raven's custody as if the Virginia courts had initial jurisdiction.

The failure of the Bennetts to advise the court of their contention that the Kansas guardianship orders constituted a previously commenced child custody proceeding not only prevented the court from resolving that issue, it also resulted in the court not complying with additional requirements of Code § 20-146.15 that were designed to coordinate temporary

emergency jurisdiction with jurisdiction to enter a final determination. The trial court was unaware of the need to set a time period to allow the Bennetts to obtain an order from Kansas, which would serve as an expiration date of its custody order; to communicate with the Kansas court; or to specify that its order was a final determination once the Commonwealth became the home state of the child.

Therefore, both the Chesapeake JDR and the trial court had jurisdiction to enter their respective custody orders. There was no error in failing to specify an expiration date to allow the Bennetts an opportunity to obtain an order from Kansas. It has been more than three and a half years since the Bennetts filed their petition in the Chesapeake JDR, and they still have not sought an order from Kansas. The trial court order remains valid. Kansas no longer has exclusive, continuing jurisdiction under Code § 20-146.13 as Raven and her parents do not live in Kansas.

We find that the trial court had jurisdiction to enter the custody determination in this case based upon temporary emergency jurisdiction and based upon the pursuit of custody by the Bennetts in Virginia. The court's jurisdiction was not limited by the language in Code § 20-146.15 when the Bennetts failed to comply with their duties to advise the court of an alternative jurisdiction. As the issue of jurisdiction has never been raised in the trial court, the trial court has proceeded in a proper fashion in compliance with the statutes and its order remains a valid exercise of its jurisdiction.

Finding the trial court appropriately exercised jurisdiction, we now review its conclusion that the parental presumption was not overcome by clear and convincing evidence. "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to an appellate court with a presumption that the law was correctly applied to the facts." Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995). "Because the trial court heard the evidence at an *ore tenus* hearing, its decision 'is entitled to great weight and will not be disturbed unless plainly

wrong or without evidence to support it.'" Piatt v. Piatt, 27 Va. App. 426, 432, 499 S.E.2d 567, 570 (1998) (quoting Venable v. Venable, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986)). The credibility of witnesses, the weight accorded to their testimony, and any inferences drawn from the facts are matters solely for the fact finder's determination. Riner v. Commonwealth, 268 Va. 296, 320, 601 S.E.2d 555, 568 (2004).

In all child custody cases, "'[t]he best interests of the child are paramount and form the lodestar for the guidance of the court in determining the dispute.'" Bailes v. Sours, 231 Va. 96, 99, 340 S.E.2d 824, 826 (1986) (quoting Walker v. Brooks, 203 Va. 417, 421, 124 S.E.2d 195, 198 (1962)). "The law presumes that the child's best interests will be served when in the custody of its parents." Judd v. Van Horn, 195 Va. 988, 996, 81 S.E.2d 432, 436 (1954). "Based on this presumption, 'the rights of the [natural] parents may not be lightly severed but are to be respected if at all consonant with the best interest of the child.'" Elder v. Evans, 16 Va. App. 60, 65, 427 S.E.2d 745, 748 (1993) (quoting Mason v. Moon, 9 Va. App. 217, 220, 385 S.E.2d 242, 244 (1989)).

The presumption favoring a parent over a non-parent is a strong one and not easily overcome. Bailes, 231 Va. at 101, 340 S.E.2d at 828. It can be rebutted if there is clear and convincing evidence that (1) the parent is unfit; (2) the court previously granted an order of divestiture; (3) the parent voluntarily relinquished custody; (4) abandonment has occurred; or (5) special facts and circumstances constitute an extraordinary reason to remove the child from the parent. Id. at 100, 340 S.E.2d at 827.

> The term "clear and convincing evidence" is defined as the measure or degree of proof that will produce in the mind of the trier of facts a firm belief or conviction upon the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the degree of proof beyond a reasonable doubt as in criminal cases; it does not mean clear and *unequivocal*.

Bottoms, 249 Va. at 413, 457 S.E.2d at 104.

"The circumstances that might justify denying a parent custody in favor of a non-parent will vary from case to case." Brown v. Burch, 30 Va. App. 670, 687, 519 S.E.2d 403, 411 (1999). "Once the presumption favoring parental custody has been rebutted, the parental and non-parental parties stand equally before the court, with no presumption in favor of either, and the question is the determination of the best interests of the child according to the preponderance of the evidence." Walker v. Fagg, 11 Va. App. 581, 586, 400 S.E.2d 208, 211 (1990).

The Bennetts contend the mother is not entitled to the parental presumption because she is unfit and voluntarily relinquished custody of Raven. The trial court heard two days of extensive argument pertaining to the mother's fitness and thereafter continued the trial in order to obtain a home study on the mother and an updated report from the guardian *ad litem*. Based on the evidence presented at the lengthy trial, the trial court did not find the mother to be unfit. We will not disturb this finding on appeal, as it is not plainly wrong or without evidence to support it.

The trial court also clearly found that the mother did not relinquish custody of Raven by conferring co-guardianship to the Bennetts in 2004. The trial judge held:

> I don't believe [the Letters of Co-Guardianship] constitutes a relinquishment in this particular set of the circumstances because of the facts in the case. I don't dispute the document exists; but given the facts of the case, I don't believe it constitutes a relinquishment of the mother's right, having been shown by clear and convincing evidence which is the standard . . . .

There is ample evidence to show the mother did not intend a permanent relinquishment of custody by petitioning the Kansas court for entry of the Letters of Co-Guardianship. See, e.g., Walker, 11 Va. App. 581, 400 S.E.2d 208 (holding that a temporary court order entered upon agreement of father and his mother entrusting the care and custody of his children to her in contemplation of his possible incarceration was not a relinquishment of his parental rights). The mother and the Bennetts clearly had a temporary agreement, whereby the Bennetts would care for Raven while the mother was at Naval boot camp and would return Raven to the mother upon

- 11 -

her completion of boot camp.  The parties in fact abided by the terms of their agreement.  When the mother left boot camp, the Bennetts executed their Consent of Co-Guardians to Termination of Guardianship and, after the Kansas court entered an Order Terminating Guardianship, the Bennetts reunited Raven with the mother in Virginia.  For the foregoing reasons, we hold the trial court's determination that the mother did not voluntarily relinquish custody is not plainly wrong or without evidence to support it.  The trial court did not err in determining the Bennetts failed to rebut the parental presumption in favor of the mother.  We therefore affirm the decision of the trial court granting sole legal and physical custody of Raven to the mother.

Affirmed.